## HANKINS *v.* STATE.

### Opinion delivered February 26, 1912.

1. EVIDENCE—DIAGRAM.—Where, in a prosecution for assault with intent to kill, a witness illustrated his testimony with a diagram showing the location of the assaulted person's wounds, it was not error to permit such diagram to be introduced as part of the testimony of such witness. (Page 32.)

2. . SAME—DEMONSTRATIVE EVIDENCE.—It was not error, in an assault case, to permit the garments worn by the assaulted person at the time he was shot to be introduced in evidence. (Page 32.)

3. ·WITNESS—IMPEACHMENT.—It was competent, in a prosecution for assault with intent to kill, to permit the State to interrogate the accused, on cross examination, as to his conduct in engaging in the illegal sale of liquor, but not as to whether he held a Federal tax receipt. (Page 32.)

4. ASSAULT WITH INTENT TO KILL—ELEMENTS.—To constitute an assault with intent to kill and murder, it must appear from all the evidence to a moral certainty that, had death ensued, it would have amounted to murder, either in the first or second degree, and that there existed in the mind of the accused a specific intent to take the life of the person assaulted, but it is not necessary that such intent be formed for any particular length of time before the assault, as it may be conceived in a moment. (Page 32.)

5. SAME—INSTRUCTION.—It was not error, in a prosecution for assault with intent to kill, to instruct the jury that every sane man is presumed to intend the natural and probable consequences of his acts. (Page 33.)

6. SAME—INSTRUCTION.—One accused of assault with intent to kill can not complain because the court failed to instruct as to the lower degrees of assault if he asked no appropriate instruction upon that phase of the case. (Page 35.)

7. SAME—INSTRUCTION AS TO MANSLAUGHTER.—Where, in a prosecution for assault with intent to kill, the evidence was such that, if the individual assaulted had died, the offense could have been reduced to

manslaughter only upon the theory that accused was shot upon sudden impulse and without sufficient provocation, a general instruction upon manslaughter was properly refused, not being applicable to the case. (Page 35.)

8.  SAME—INSTRUCTION.—It was not error, in a prosecution for assault with intent to kill, to refuse to instruct the jury that "if you find that the defendant assaulted the prosecuting witness with a deadly weapon, with the intent to inflict upon him a bodily injury, there being no considerable provocation for the assault or the circumstances of the assault showing a wicked and malignant disposition upon the part of the defendant, then you will convict him of an aggravated assault;" as the jury might have understood that they could not convict of assault with intent to kill, though it was made with intent to kill and with malice.   (Page 35.)

9.  INSTRUCTIONS—REPETITION.—The refusal of requested instructions is not error where they are covered by those given.   (Page 36.)

Appeal from Cleburne Circuit Court; *George W. Reed,* Judge; affirmed.

*Troy Pace* and *W. F. Pace,* for appellant.

1.  That part of the fourth instruction which charged the jury that "it is not necessary that such intent (to kill) be formed for any particular length of time before the assault, but it may be conceived in a moment," would be a proper statement of the law where the object of the assault was accomplished and the defendant on trial for murder; but where the defendant is on trial for assault with intent to kill, the intent must have been so clearly in the mind of the defendant as to leave no doubt that it was there.   The instruction was therefore misleading. 34 Ark. 275; 49 Ark. 156; 54 Ark. 283.

2.  The court also erred, for the same reason, where in the fifth instruction it charged the jury that "every sane man is presumed to intend the natural and probable consequence of his acts."   The instruction should have also told the jury that they should consider the nature of the weapon and the manner of using it, together with all the other circumstances in the case, in determining whether the intent existed.   54 Ark. 283.

3.  Instruction 13 is erroneous because it is abstract, argumentative, misleading and confusing, admissible possibly in a murder case under some circumstances, but not in a case of assault with intent to kill.   Defendant can not be cut off

from his right to have the jury determine from all the facts and circumstances whether, if death had resulted, he would have been guilty of murder or manslaughter.   9 Ark. 42; 16 Ark. 592.

Instruction 15 is also abstract and misleading, the defendant not being on trial for murder.   The correct rule is that a defendant is justified in acting in his necessary self-defense when the circumstances surrounding him at the time are sufficient, provided he is not negligent in coming to the conclusion, to excite his fears that the danger is imminent and pressing. 67 Ark. 598, and cases cited.

4.   The court erred in refusing to charge the jury on the question of manslaughter, and also on the questions of aggravated assault and assault and battery.   54 Ga. 660; 30 Tex. App. 343; 84 Ia. 172; 37 Mo. App. 137; 70 Kan. 241; 20 Ky. L. Rep. 36; 26 S. W. 404; 72 S. W. 853; 81 S. W. 37; 83 S. W. 202; 87 S. W. 347; 50 Pac. 472; Kirby's Dig., § 2415; 13 Ark. 712; 43 Ark. 295; 37 Ark. 436; 30 Ark. 337; 41 Ark. 362; 72 Ark. 569; 50 Ark. 549; 52 Ark. 347; 96 Ark. 52.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

1.   Instructions 3 and 4 are correct.   The same test applies where the accused is charged with assault with intent to kill as where he is charged with having committed a homicide.

2.   Instructions 13 and 15 are correct.   62 Ark. 286; 93 Ark. 409; Kirby's Dig., § 1797.

3.   If there was any testimony on which the jury could have based a verdict convicting appellant of aggravated assault, the court should have submitted to them that issue; but appellant's own testimony is sufficient to show that there was but one question to decide, *i. e.*, whether he shot with intent to kill, or in his own necessary self-defense.   There is nothing in the record to reduce the crime from assault with intent to kill to aggravated assault.   70 S. W. 543; 59 S. W. 894; 45 S. W. 495; 37 S. W. 864; 36 S. W. 86; *Id.* 446; 14 S. W. 212; 44 S. W. 239; 47 S. W. 643; 96 Ark. 56.

McCulloch, C. J.   The defendant appeals from a conviction of the crime of assault with intent to kill, alleged to have been committed by shooting one John Shreve with a pistol at the town of Leslie, Searcy County, Arkansas.   The trial of

the case was had in Cleburne County, on a change of venue.

The undisputed evidence establishes the fact that defendant shot Shreve four times in the left side and back, inflicting dangerous wounds. The wounds did not prove fatal, but Shreve did not appear at the trial. The shooting, however, occurred in the daytime and in the presence of several witnesses in front of Shreve's place of business. It seems that defendant and Shreve had formerly been in business together, but at the time of the shooting the latter and one Guthrie had a place of business in Leslie where intoxicating liquors were unlawfully sold. On the day of the shooting one Johnson received a bottle of whisky from defendant, and a short time thereafter Shreve took the whisky away from Johnson. Johnson appealed to defendant to go with him to Shreve for the purpose of satisfying the latter that defendant had loaned the whisky to him. They walked over to Shreve's place of business, and the shooting followed a brief conversation between the two.

The testimony adduced by the State, viewed in its strongest light, was sufficient to establish the following state of facts with reference to the shooting and circumstances which immediately attended it: Shreve was sitting on an upturned bucket in front of his place of business, with his pocket knife out, whittling on a plank, when defendant and Johnson walked up. Defendant asked Shreve, "Did you take a bottle of whisky off of this man?" and, before Shreve replied, defendant drew his pistol and fired. Shreve arose, and turned away from defendant, and said this: "Why, Hawk, you don't mean to kill me, do you?" and defendant replied, "Yes, you damned son-of-a-bitch, that is just what I mean to do," and continued to use his pistol, firing several more shots. It appears from the testimony that a short time before this defendant and Shreve had a friendly conversation in front of the latter's place of business.

Defendant's own account of the difficulty, which, though corroborated by other witnesses, is the most favorable testimony to his own side of the case, is as follows: He states that he and Johnson walked up to Shreve, that he (defendant), said: "John, you know it is dirty to treat a man like that," and that Shreve replied, "No, it ain't dirty, either," and jumped up with the knife in his hand, and started toward defendant in a threatening attitude. Defendant stated that he stepped back two or

three steps, and fired the first shot, and that he continued to fire because Shreve still had the knife in his hand and was trying to get hold of him.

.    There were several exceptions to the introduction of testimony that need be noticed only, very briefly.

Doctor Russell, a physician and surgeon was introduced as a witness, and testified concerning the wounds upon Shreve's body when he was called to give medical attention immediately after the shooting.   He illustrated his testimony with a diagram which he had made of the man's body and the location of the wounds, and at the end of the testimony this diagram was introduced in evidence over defendant's objection.   We can see no well-founded objection to this, as the diagram was a part of Doctor Russell's testimony, and was authenticated by him.   It was not introduced as independent testimony, but merely as a part of the testimony of the witness, and it was competent for the purpose of showing the precise location of the wounds.

The garments worn by Shreve at the time of the shooting were introduced in evidence over defendant's objection.   This was done after the garments were identified by Doctor Russell and another witness, and we discover no error in allowing this to be done.

The prosecuting attorney was permitted to ask defendant on cross examination, over the objection of his counsel, if he had not been engaged in the unlawful sale of intoxicating liquors at Leslie, and if he had not paid the Federal tax on the sale of liquors.   Defendant denied that he had been engaged in the unlawful sale of liquors, but said that he had been selling "near-beer," and had paid the Federal tax, as he explained, to protect himself in case some of the liquor he sold did not stand the test. It was competent for the State to interrogate the defendant, on cross examination, as to his conduct in engaging in the illegal sale of liquor.   This was competent for the purpose of affecting his credibility as a witness.   *Hollingsworth* v. *State*, 53 Ark. 390.

As a part of the examination, it was not improper for him to be asked whether he held a Federal tax receipt.   We think all this testimony had some legitimate tendency affecting his credibility, and that there was no error in permitting it.

The court gave instructions correctly defining the offense of assault with intent to kill, and, among other things, said:

"To constitute an assault with intent to kill and murder, it must appear from all the evidence in the case to a moral certainty that, had death ensued, it would have amounted to murder either in the first or second degree, and that there existed in the mind of the one making the assault a specific intent to take the life of the person assaulted, but it is not necessary that such intent be formed for any particular length of time before the assault, but it may be conceived in a moment before."

This announces the law in accordance with the decisions of this court. *Lacefield* v. *State*, 34 Ark. 275; *Scott* v. *State*, 49 Ark. 156; *Chrisman* v. *State*, 54 Ark. 283.

Following this, the court gave accurate instructions defining the crimes of murder in the first and murder in the second degrees.

The following instruction was given, which defendant objected to:

"You are further instructed that every sane man is presumed to intend the natural and probable consequences of his acts."

It is insisted that this instruction, while a correct one in a murder case where death had resulted, should not be given in a case where death did not result, and where it devolved upon the prosecution to show that there existed a specific intent to kill. It is true that, in prosecutions for crime involving an attempt to commit a particular act, it is essential that a specific intent to commit that offense must be proved, either directly or by circumstances. But it does not follow that the jury, in passing upon the question of intent, should not consider all the circumstances, including the weapon used and the manner of its use, and it is not improper for the court to give an instruction saying that there is a presumption that the natural and probable consequences of the act were intended. In *Chrisman* v. *State, supra,* this court, after laying down the rule that proof of the specific intent to kill was essential, said.

"We do not hold that it would have been improper to instruct the jury that the defendant should be presumed to have intended the natural and probable consequences of his act in stabbing the prosecuting witness. For it was clearly the province and duty of the jury to consider the nature of the weapon

used by the defendant and his manner of using it, together with all the other circumstances of the case, in determining whether the assault was in fact committed with the intent alleged in the indictment."

Mr. Bishop stated the rule as follows:

"On an indictment for a technical attempt * * * they (the jury) may consider the nature and tendency of a proved act to determine the intent prompting it. And the court will instruct them that the doer should be presumed to have intended its natural and probable consequences." 1 Bishop on Criminal Law, § 735.

The court also gave the following instruction over defendant's objections, and counsel earnestly insist that they are incorrect:

"13. No one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden encounter or in a combat on a sudden quarrel, or from anger suddenly aroused at the time it is made or in a mutual combat, is justified or excused in taking the life of his assailant unless he is so endangered by such assault as to make it necessary to kill his assailant to save his own life, or to prevent a great bodily injury, and employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. He can not provoke the attack, bring on the combat, and then slay his assailant, and claim exemption from the consequences of killing his adversary, on the ground of self-defense. He can not invite or voluntarily bring upon himself an attack with a view of resisting it, and, when he has done so, slay his assailant, and then shield himself on the assumption that he was defending himself. He can not take advantage of a necessity produced by his own wrongful or unlawful act. After having provoked or brought on the combat, he can not be excused or justified in killing his adversary for the purpose of saving his own life, or preventing a great bodily injury, until he had in good faith withdrawn from the combat, as far as he can, and done all in his power to avoid the danger and avert the necessity of killing. If he had done so, and the other party pursues him, and the taking of life becomes necessary to save his life or to prevent his receiving great bodily injury, he is excusable."

"15. A bare fear of these offenses, to prevent which the

homicide is alleged to have been committed, shall not be sufficient to justify the killing."

In testing the correctness and appropriateness of these instructions, it must be noted that the defendant's principal claim was that he acted in self-defense from the assault of Shreve. The court, at his request, gave instructions on the right of self-defense. Now, if the instructions quoted above had been so framed as to tell the jury that they should convict the defendant if the plea of self-defense had not been made out, then they would have been erroneous for the defendant, though not acting strictly in self-defense so as to be entitled to an acquittal, may have only been guilty of a lower degree of assault; but the instructions did not go to that extent. They merely stated that the circumstances recited therein were not sufficient to justify or excuse the shooting.

It is next insisted that the court erred in refusing to give instructions on manslaughter so as to permit the jury to find the defendant guilty of a lower degree of assault. We are of the opinion that there was sufficient evidence adduced by defendant to warrant the submission of a lower degree; but, before the defendant can complain, he must have asked for correct instructions on the subject. One of the instructions asked was merely a definition in general terms of the crime of manslaughter. In view of the fact that the court defined murder in the first and second degrees, it would not have been improper to have given an appropriate instruction defining manslaughter. But the facts did not call for a general instruction on that subject, and it should have been confined to the law applicable to the peculiar state of this case. The only theory, if the death of Shreve had ensued, upon which the offense would have been reduced to manslaughter, was that defendant was not justifiable as acting in self-defense, but that he had fired the shot upon a sudden impulse and without sufficient provocation, which would have reduced the crime to manslaughter. *Allison* v. *State,* 74 Ark. 453. Defendant did not ask an instruction upon that theory, and therefore can not complain that the court failed to give an instruction on the subject.

Defendant asked the following instruction, which was refused:

"3. You are instructed that the indictment in this case

includes a charge of aggravated assault, and in this case, if you find that the defendant assaulted the said Shreve with a deadly weapon, with the intent to inflict upon him a bodily injury, there being no considerable provocation for the assault, or the circumstances of the assault showing a wicked and malignant disposition upon the part of the defendant, then you will convict him of an aggravated assault, and fix his punishment at a fine of not less than fifty dollars and not more than one thousand dollars, and imprisonment in the county jail not exceeding one year."

It is sometimes sufficient, but not always proper, to give an instruction in the exact language of the statute, for it may prove misleading to the jury. Lawmakers sometimes frame a statute in form that is not at all appropriate in giving as a charge to a jury, and this is so with reference to this particular statute. The jury might have understood from the instruction that they could not convict of the highest degree of assault, even though it was made with specific intent to kill and with malice. It was manifestly the design of the framers of this statute to lay down the law that if one made an assault upon another with a deadly weapon, with intent to inflict bodily injury but not death, and where no considerable provocation appears, etc., the offense should only be a misdemeanor, punishable by fine and imprisonment. This intention is clear to those who are learned in the law; but when stated to a jury, composed of men of average intelligence but not learned in the law, it might prove misleading, without the qualification we have indicated. So we think that the defendant has failed to ask a correct instruction, and can not complain that none was given on the subject.

Defendant also asked an instruction on assault and battery, but the evidence was not sufficient to warrant an instruction which could have reduced the offense to that grade, and therefore it was properly refused.

The court gave several instructions on the subject of reasonable doubt, and the ones asked by the defendant on this subject and refused were sufficiently covered in others which were given.

There are other assignments of error which we do not deem of sufficient importance to discuss.

Upon the whole, we think that the case was fairly sub-

mitted to the jury upon appropriate instructions, and that the evidence was sufficient to sustain the verdict.

Affirmed.