## LACEFIELD VS. THE STATE.

1. CRIMINAL LAW: *Assault with intent to murder.*

   To sustain an indictment for an assault with intent to murder, the evidence must be such as would warrant a conviction for murder if death had ensued from the assault.

2. ASSAULT WITH INTENT TO KILL: *Shooting one with intent to kill another.*

   When one, intending to kill A, shoots and wounds B, or if it be doubtful which he shoots at, he can not be convicted of an assault with intent to kill B.

   *Section* 1327, *Gantt's Digest*, has no application to assaults with intent to kill. It has relation to maiming or wounding; and prosecutions under it are for the maiming, or bodily injury done, and not for the assault or attempt.

Lacefield vs. The State.

3. CRIMINAL PLEADING: *Indictments need not follow statutory form.*
  The form of indictment given in the statute need not be strictly followed. It is sufficient if it contain the requisites specified in *section* 1796, *Gantt's Digest.*

4. SAME: *Indictment for assault with intent to kill.*
  Indictments for assault with intent to kill, need not state the means used by the assailant to effectuate his intent.

5. CRIMINAL PRACTICE: *Trial without plea of defendant, error.*
  To proceed to trial without a plea from the defendant, is error, for which judgment should be arrested.

APPEAL from *Conway* Circuit Court.
Hon. W. D. JACOWAY, Circuit Judge.
*Allen* and *Williams & Clark*, for appellant.
*Attorney General,* contra.

HARRISON, J.   The appellant was tried in the Conway circuit court upon the following indictment:

"CONWAY CIRCUIT COURT.
"The State of Arkansas,  ⎫
      vs.                    ⎬
    Lee Lacefield.          ⎭

"The grand jury of Conway county, in the name and by the authority of the state of Arkansas, accuse Lee Lacefield of the crime of *felony*, committed as follows :

"The said Lee Lacefield, on the first day of December, A. D. 1878, in the county and state aforesaid, upon one Thomas Hearstings, with a certain pistol, feloniously, willfully and of his malice aforethought, did make an assault with intent him, the said Thomas Hearstings, then and there feloniously, willfully, and of his malice aforethought to kill and murder, then and there, no considerable provocation appearing; against the peace and dignity of the state of Arkansas.        A. S. McKENNON,
                                  "*Prosecuting Attorney, Fifth Circuit.*"

The jury returned a verdict of guilty as charged in the indictment, and assessed his punishment at three years imprisonment in the penitentiary.

He moved for a new trial, which was refused, and he was sentenced in accordance with the verdict.

Upon the trial the state introduced L. M. McClure as a witness, who testified that the defendant was, on or about the first day of December, 1878, in the town of Plummerville, in Conway county, and that he became involved in a difficulty with one Holloway. The witness induced him to leave Holloway's presence and go with him to witness's saloon. When they got to the saloon, the defendant took a pistol from his pants' pocket, and, after cocking it, put it into another pocket. The witness dissuaded him from any further difficulty. He then left, and in a short time returned with Holloway, and called for whisky. He was intoxicated, and the witness tried to prevail upon him not to drink any more, but finally, after exacting from him a promise that he would behave himself, gave him a drink.

In a short time after taking the drink, he staggered or fell against the sash of a window and broke two panes of glass. The witness demanded twenty-five cents from him for the panes of glass he had broken; when he declared, with an oath, he would pay no such sum, and became very disorderly—using profane and abusive language to the witness. The witness called Thomas Hearstings, a bartender in the saloon, and he and Hearstings put the defendant out of the saloon on a porch, and Heartstings then went back into the saloon; the defendant holding on to the witness; the witness, to get loose from him, seized him by the hair of his head, with both hands, and *churned* his head several times against the wall, and then threw him down on the floor, and, with his hands in his hair as before,

struck his head several times against the floor.  The defendant then let go the witness, and the witness dragged him by the hair of his head off the porch to the ground, and left him and went back into the saloon to a desk at the farther end.  Very soon afterwards Hearstings told the witness to look out, the defendant was going to shoot into the saloon, and immediately a shot was fired from without, which grazed Hearstings's neck, and he fell on the floor, exclaiming, "I am shot"—the bullet lodging in a picture frame on the wall; and two or three other shots, from the same direction, were fired into the saloon in rapid succession, the bullets lodging in the wall.  The witness got a pistol and pursued the defendant, who was moving rapidly away, and arrested him, and, taking his pistol from him, delivered him into the custody of the constable.  When arrested, his pistol had four empty chambers.

Thomas Hearstings testified for the state, and his testimony corroborated McClure's, except that he knew nothing of the taking of the pistol from the defendant; and Columbus Taylor, another witness for the state, testified to seeing the defendant fire the shots.

The court charged the jury:   That, although the shots were fired at some other person, if Thomas Hearstings had been killed, the killing would have been murder, the same as though they had been fired at him, directly, unless they were fired in necessary self-defense.

The defendant excepted to this charge, and asked the following, which the court refused:   That the jury must, before they find the defendant guilty, be satisfied, beyond a reasonable doubt, that he intentionally made an assault upon Thomas Hearstings; and that proof of an assault upon another person, although Thomas Hearstings was hit, was not sufficient to warrant a verdict against him.

The court erred in charging as it did, and in refusing to charge as asked by the defendant.

The proposition is incontrovertible that to sustain an indictment for an assault with intent to murder, the evidence must be such as to warrant a conviction for murder had death ensued from the assault. *McCoy v. The State, 8 Ark., 451; Cole v. The State, 10 Ark., 318; 1 Russ. on Crimes, 719; Whar. Crim. Law, 467; Stark. on Ev., 53.*

If the assault was made in a sudden heat of passion, caused by the beating and maltreatment the defendant received from McClure, and that was a provocation apparently sufficient to make the passion irresistible, and the death of McClure had ensued, the killing would have been manslaughter, and not murder.

If, therefore, the intent was not so criminal as would have made the killing murder if McClure had been killed, the crime could not have been greater if the act, or shooting, had resulted in the unintended death of Hearstings.

Bishop, in his work on criminal law, says: "How intensely evil the intent must be to infuse the bane of criminality into the unintended act, is not easily stated in a word. Evidently there may be cases wherein * * * * * * it is too minute in evil for the law's notice, the same as when the act is the true echo of the intent, and as when carelessness exists. So, also, as, on the one hand, the evil intended is the measure of a man's desert of punishment; and, on the other hand, the injury done to society is the measure of its interest to punish, and punishment can only be inflicted when the two combine. It follows, that where the law has different degrees of the same offense, as in felonious homicide, which is divided into murder and manslaughter, the crime must be assigned to the higher or lower degree, according as the intent was more or less in-

tensely wrong.   *   *   *   *   *   *   Thus we
have seen that to shoot unlawfully, but not feloniously, at
the poultry of another, and thereby accidentally kill a hu-
man being, is manslaughter; to do the same with the felo-
nious intent to steal the poultry, is murder." *1 Bish. Crim.
Law, sec. 334.* And Wharton says: "Where a blow aimed
at one person lighteth upon another and killeth him, this
is murder. Thus, A, having malice against B, strikes at
and misses him, but kills C. This is murder in A; and if
it had been without malice, and under such circumstances
that if B had died it would have been but manslaughter,
the killing of C, also, would have been but manslaughter."
*2 Whar. Crim. Law, sec. 965; 1 Hale, 766 n. (11).*

Whilst it is true that every person is presumed to con-
template the ordinary and natural consequences of his acts,
such presumption does not arise where the act fails of effect,
or is attended by no consequences; and where such act is
charged to have been done with a specific intent, such in-
tent must be proved, and not presumed from the act.

"If the act is alleged to be done," says Greenleaf, "with
intent to commit one felony, and the evidence be of an in-
tent to commit another, though it be of the like kind, the
variance is fatal. Thus, when a burglary was charged with
intent to steal the goods of W, and it appeared that no such
person as W had any property there, but that the intent
was to steal the goods of D, the alleged owner of the house,
and that the name of W had been inserted by mistake, in-
stead of D, it was held that the indictment was not sup-
ported." *3 Grecn. on Ev., sec. 17.*

In the case of *Rex v. Holt (34 Eng. Com. Law Rep., 522),*
the prisoner was indicted for shooting at John Hill, with
intent to murder him. It was proven that the prisoner,
intending to shoot and kill the Rev. James Lee, shot at

Hill, mistaking him for Lee, but without doing him any injury. The judge left it to the jury to say whether there was an intent to murder Hill. The jury found that the prisoner did not intend to do any harm to Hill, and the judge directed an acquittal. *2 Stark on Ev., 572; State v. Neal, 37 Maine, 468; The State v. Jefferson, 3 Harrington, 571; Ogletree v. The State, 28 Ala., 693.*

Section 1327, Gantt's Digest, which declares that if any person, of his own malice, attempt to *shoot*, or to do some *bodily injury* to some particular individual, and in attempting to do so, shall shoot or injure some third person against whom the offender had no evil design, he shall be held and adjudged to be guilty in the same manner as if the injury had fallen on the person intended—has no bearing upon the question before the court. It has, as appears by both its language and the context, relation to maiming and wounding, and prosecutions under it are for the maiming or bodily injury done, and not for the assault or attempt.

It follows that the fact that Hearstings was struck by one of the bullets, but tended, as any other fact or circumstance in the case, to prove that the defendant shot at him—and if, from all the evidence in the case, the jury were satisfied he did not shoot at him, but at McClure, or were in doubt as to which he shot at, the charge in the indictment was not sustained.

The indictment, it is insisted, did not charge the commission of any particular crime.

Felony is not a crime, but a class of crimes, and the use of the word felony in the indictment, as a designation of the offense, was inaccurate and improper; but the offense of which the defendant was accused, was made

distinct and certain by the statement of the facts and circumstances of its commission.

The form of the indictment given in the statute need not be strictly followed—it is sufficient if it contain:

" *First*—The title of the prosecution, specifying the name of the court in which the indictment is presented, and the name of the parties.

" *Second*—A statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended." *Gantt's Dig., sec. 1796; Anderson v. The State, 5 Ark., 444.*

It is also contended that it is defective in not setting forth the manner in which the assault with the pistol was made, as whether by shooting or striking," etc.

The rule is well settled that in an indictment for an assault with intent to commit an offense, the same particularity is not necessary, as is required in an indictment for the actual commission of the offense ; and an indictment for an assault with intent to murder need not state the means made use of by the assailant to effect his murderous intent. They are matters of evidence to the jury. *Robinson v. The State, 5 Ark., 659; 2 Whar. Crim. Law, 1281; 2 Bish. Crim. Proceed., sec. 77; United States v. Herbert, 5 Cranch, 87; Harrison v. The State, 2 Coldu., 232; State v. Dent, 3 Gill & Johns, 8.*

The record states that the arraignment of the defendant was waived by him, but contains no entry of a plea to the indictment, though the trial was had, as if the plea of not guilty had been entered.

It was certainly very irregular to proceed to trial without a plea—there was no issue and nothing to try. It was an error for which the judgment should have been

arrested. *1 Arch. Crim. Prac. and Plead., 178–31; 3 Whar. Crim. Law, sec. 3043; State v. Fort, 1 Car. Law Reps., 510; Cannon v. The State, 5 Tex. Ct. App., 34; Bush v. The State, ib., 64; The State v. Matthews, 20 Mo., 55.*

The judgment is reversed, and the cause remanded with instructions to require the defendant to plead to the indictment, and to be proceeded in according to law.