| 54 | 283 |
| 54 | 340 |

---

## CHRISMAN v. STATE.

Decided February 28, 1891.

1. *Assault with intent to kill—Proof of intent.*

On an indictment for assault with intent to kill proof of the specific intent is necessary, and such intent will not be inferred as a matter of law from proof of an assault with a deadly weapon without provocation. Whether the assault was made with the intent alleged is a question for the jury, in the determination of which they may consider the nature of the weapon and the manner of using it, together with all the other circumstances of the case.

2. *Drunkenness as a defense.*

Although voluntary drunkenness will not excuse the commission of a crime; yet where a person is accused of a crime such as can be committed only by doing a particular thing with a specific intent, it may be shown that, at the time of doing the thing charged, the accused was so drunk that he could not have entertained the intent necessary to constitute the crime.

APPEAL from *Johnson* Circuit Court.

J. G. WALLACE, Judge.

*A. S. McKennon* and *J. E. Cravens* for appellant.

The court erred in third, fourth, and especially the fifth instruction, and in refusing the prayers asked by defendant. These are reversible errors. Mansf. Dig., sec. 2459. In this class of cases the *intent* must be proved, and is *never presumed.* 49 Ark., 156; 11 S. E. Rep., 620; 19 Mich., 401; 10 *id.*, 212; 13 S. W. Rep., 147; 2 Thompson on Trials, p. 1888; 22 Pac. Rep., 80; 34 Ark., 275; *ib.*, 341.

*W. E. Atkinson,* Attorney General, for appellee.

The third instruction is good as far as it goes; the court might have gone further and told the jury that in statutory crimes consisting of an act and intent, the intent must exist to create guilt. The fourth is in harmony with 34 Ark., 275. As to whether upon an indictment for assault with intent to kill, it is necessary to prove a specific intent, or whether the use of a deadly weapon raises the presumption of an intent, see 10 Ark., 324; 8 Car. & Payne, 541; 9 *id.*, 258; 49 Ark., 159.

1. Intent in assault with intent to kill.

MANSFIELD, J. The appellant was convicted of an assault with intent to kill and murder F. J. Stanfield. The statute under which the indictment was found declares that " whoever shall feloniously, willfully and with malice aforethought, assault any person, with intent to murder or kill, * * * * shall, on conviction thereof, be imprisoned in the penitentiary not less than three nor more than twenty-one years." (Mansfield's Dig., sec. 1567.) It has been frequently held by this court that an indictment under this section of the criminal law cannot be sustained unless the evidence would have warranted a conviction for murder if

death had ensued from the assault charged to have been committed. (*Lacefield* v. *State*, 34 Ark., 275, and cases. there cited.) But it has never been ruled here that such evidence will in every case be sufficient. On the contrary,. the decision in the case of *Lacefield* v. *State*, cited above, and that in *Scott* v. *State*, 49 Ark., 156, both distinctly recognize the doctrine laid down by Bishop, that an attempt to commit a crime, such as the attempt charged in this in- dictment, is an offense consisting of two elements—"an evil intent and a simultaneous resulting act." Commenting on this class of crimes, Mr. Bishop says: "When we say that a man attempted to do a thing, we mean that he in- tended to do, specifically, it; and proceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part. Thus, to constitute murder, the guilty person need not intend to take life; but, to constitute an attempt to murder, he must so intend." * * * * "The intent must be specific to do some act,. which, if it were fully performed, would constitute a sub- stantive crime. Therefore * * * * general malevo- lence is not sufficient, even though of a sort which, added to the appropriate act, would constitute an ordinary sub- stantive offense." After further comment on this subject,. the same author says: "The doctrine of an intent in law, differing from the intent in fact, is not applicable to these technical attempts; and, if the prisoner's real purpose were not the same which the indictment specifies, he must * * * be acquitted. * * * For the charge is, that the defend- ant put forth an act whose criminal quality or aggravation proceeded from a specially evil intent prompting it; and, in reason, we cannot first draw an evil intent from an act, and then enhance the evil of the act by adding this intent back again to it." 1 Bish. Crim. Law, secs. 729, 730, 731, 735. In Lacefield's case, 34 Ark., *supra*, the court said that, while "it is true that every person is presumed to contemplate the ordinary and natural consequences of his acts, such presumption does not arise where the act fails of effect, or

is attended by no consequences; and where such act is charged to have been done with a specific intent, such intent must be proved, and not presumed from the act." As an application of this doctrine, it was held in that case that where one, "intending to kill A, shoots and wounds B, * * * * he cannot be convicted of an assault with intent to kill B." In *Scott* v. *State*, 49 Ark., 156, the defendant was charged with an assault upon one Bannister with intent to kill and murder him; and the trial court instructed the jury that, if they believed from the evidence that the defendant shot at some one other than Bannister, or if they had "a reasonable doubt as to whom the defendant intended to shoot," they should acquit the defendant, unless they further found from the evidence that the defendant shot into the house of Bannister and into a crowd where he (Bannister) was at the time situated, without provocation and when all the circumstances of the shooting showed an abandoned and wicked disposition and a reckless disregard of human life." But this court held that, as the "essence" of the crime charged was the specific intention to take the life of Bannister, it was necessary to prove the intent laid in the indictment to the satisfaction of the jury; and the judgment was reversed on the ground that the concluding portion of the charge quoted above was "liable to mislead the jury into the belief that proof of the particular intent alleged could be dispensed with."

In this case the evidence shows that the defendant assaulted Stanfield with a knife, inflicting upon the person of the latter a dangerous wound. The testimony furnishes no description of the knife used by the defendant; but, from the nature of the wound received by Stanfield and from what is said of the knife, it may well be inferred that it was a deadly weapon. There was evidence showing that the defendant was intoxicated at the time of making the assault, and that he had been drinking to excess for about four weeks. It was also shown that he had been intemperate for several years; and one of the witnesses stated that, when

intoxicated, he seemed to be irrational, and had the appearance of "a raving maniac." Another stated that for a week or more before the assault on Stanfield the defendant did not appear to know "what he was about." Others described his condition during the same time by saying that they did not think he "was at himself." Several witnesses, however, on the part of the State, testified that although drunk at the time of the assault, the defendant did not appear to be irrational. The court, against the defendant's objection, gave to the jury the following instruction:

"5. If the jury believe from the evidence that the defendant assaulted and stabbed the prosecuting witness with a knife calculated ordinarily to produce death, without provocation, the law presumes that he did it with the felonious design to kill; and the burden of proof is on the defendant to show to the contrary either by proof on the part of the State or defense."

Tested by the ruling of this court in the cases cited above, and by numerous decisions in other States having statutes similar to that on which the indictment is based, this instruction was erroneous. Whether the defendant assaulted Stanfield with the specific intent alleged in the indictment, was a question of fact which it was his right to have determined by the jury upon the whole evidence in the cause. But, under the instruction copied above, the jury were at liberty to presume the existence of a felonious intent to kill from the facts mentioned in the court's charge, without considering any others. We do not hold that it would have been improper to instruct the jury that the defendant should be presumed to have intended the natural and probable consequences of his act in stabbing the prosecuting witness. For it was clearly the province and duty of the jury to consider the nature of the weapon used by the defendant and his manner of using it, together with all the other circumstances of the case, in determining whether the assault was in fact committed with the intent alleged in the indictment. I Bishop, Crim. Law, sec. 735 and note I.

But the objectionable charge shifted the burden of proof as to the question of such intent, which would still remain for the determination of the jury, although they believed that the facts recited by the court's instruction had been established by the evidence. *Ogletree* v. *State*, 28 Ala., 693; *State* v. *Neal*, 37 Me., 468; 1 Starkie, Ev. (10th ed.), 72; *State v. Jefferson*, 3 Harrington, 571.

2. Drunken-  
ness as a de-  
fense.

We do not think it necessary to review on this appeal the other rulings of the circuit court complained of by the defendant. But as the cause must be remanded, we think it proper to say that although voluntary drunkenness cannot, as the jury were told by the court, excuse the commission of a criminal act; yet, where a person is accused of a crime such as can be committed only by doing a particular thing with a specific intent, it may be shown that at the time of doing the thing charged the accused was so drunk that he could not have entertained the intent necessary to constitute the offense. 1 Bishop, Crim. Law, sec. 413. Thus, in *Wood* v. *State*, 34 Ark., 341, it was held that "if one at the time of taking property is so under the influence of intoxicating liquor that a felonious intent cannot be formed in his mind, he is not guilty of larceny." The law on this subject is further illustrated by a ruling in *Casat* v. *State*, 40 Ark., 511. In the latter case it was held that voluntary intoxication cannot reduce murder in the first degree to a lower degree of homicide, unless it is accompanied by a temporary destruction of reason, and that it is not sufficient to prove a condition of mere nervous excitement produced by drinking.

For the error we have indicated the judgment must be reversed, and the cause remanded for a new trial.