## Avey v. State.

## Opinion delivered September 26, 1921.

1. CRIMINAL LAW—CHANGE OF VENUE—DISCRETION OF COURT.— Upon an application for a change of venue in a criminal case upon the ground that the minds of the inhabitants of the county are so prejudiced against defendant that a fair and impartial trial cannot be had therein, it was not an abuse of discretion to deny the application where the affiants were advised as to the state of public sentiment in only 8 of the 24 townships in the county.

2. WITNESS—CROSS-EXAMINATION—IMPEACHMENT.—While a witness who is cross-examined as to a collateral matter cannot be contradicted, if a witness for the defense in a murder case denied any illicit relationship with the defendant, and such relationship, if established, would tend to prove a motive for the killing, such witness may be contradicted, as proof of a motive is not a collateral matter.

Appeal from Stone Circuit Court; *Dene H. Coleman*, Judge; affirmed.

*E. G. Mitchell, Earl C. Casey, Samuel M. Casey,* for appellant.

Appellant's petition for change of venue; supported by witnesses who testified as to the state of feeling in regard to him, coming from parties who showed a knowledge of such feeling existing in at least three-fourths of the county, should have been granted. 98 Ark. 139; 121 Ark. 390; 95 Ark.; 83 Ark. 36; 80 Ark. 360.

The purpose of examining the supporting witnesses is not to determine whether or not the accused can obtain a fair trial but to ascertain the credibility of the supporting witnesses. 120 Ark. 302.

Because the witnesses could not remember the names of all the persons to whom they talked about the case does not detract from the value of their testimony. 98 Ark. 139.

It is not necessary to show beyond a reasonable doubt or even by a preponderance of the evidence that a fair and impartial trial cannot be had, to obtain a change of venue, but same should be granted if the show-

ing is such as to raise a reasonable apprehension that the defendant cannot receive a fair trial.   16 C. J. p. 215; 262 Ill. 411, 104 N. E. 804, Ann. Cas. 1915 A. P. 1171.

It was error for the court to give instruction No. 19. Also to allow the impeachment of the witness Vada Avey and the defendant himself upon a collateral matter.   C. & M. Digest, § 4187.   A witness cannot be impeached by proof of specific acts of immorality, nor as to immaterial collateral matters.   53 Ark. 387; 91 *Id.* 555; 76 *Id.* 366; 120 *Id.* 458; 100 *Id.* 321; 132 *Id.* 522; 99 *Id.* 604; 101 *Id.* 147; *Powell* v. *State,* ms. op.

Bad character of the accused cannot be resorted to from which to infer guilt.   88 Ark. 261.

As to the test of whether a fact inquired into on cross examination is collateral, see 99 Ark. 616.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

The refusal of a motion for a change of venue, after hearing of testimony bearing on the credibility of the persons making supporting affidavit, is in the sound discretion of the court.   85 Ark. 536; 121 Ark. 302.   The subscribing witnesses must have fairly accurate information concerning the state of mind of the inhabitants of the entire county toward defendant.   Here the witnesses only showed such knowledge in eight of the twenty-four townships in the county.

Unless the trial court abuses its discretion in overruling motion for change of venue, the order is conclusive on appeal.   95 Ark. 239; 98 Ark. 139; 100 Ark. 301.

Testimony of the immoral conduct of the defendant and Vada Avey was not introduced for the purpose of impeaching them but to show a motive for the crime, and is not a collateral issue.   144 Fed. 14, 18, 75 C. C. A. 172, 7 Ann. Cas. 62.

Motive is an inferential fact, and may be inferred, not merely from the attendant and surrounding circum-

stances, but, in conjunction with these, all previous occurrences having reference to and connected with the commission of the offense. 86 Pac. 43, 12 Idaho 424; 4 Sou. 686, 85 Ala. 7, 7 Am. St. Rep. 17; 71 Ark. 112.

SMITH, J. At the trial from which this appeal comes appellant was convicted of the crime of murder in the first degree for killing one Garfield Norman. He was given a life sentence in the penitentiary.

Two points are insisted upon for the reversal of the judgment of the court below. The first is that the court erred in refusing appellant a change of venue. The second is that the court erred in admitting certain testimony, and that the error was accentuated by giving an instruction covering this incompetent testimony.

The affidavit for the change of venue was made by certain residents of Stone County, the county in which the killing occurred. To ascertain the credibility of these affiants, they were examined in open court. At the conclusion of this hearing the court announced its finding and decision as follows: "Gentlemen, the law provides that when a person charged with a crime files the proper affidavit, complying with the statute, and setting out that the minds of the inhabitants of the county, in which he is charged with the crime, are so prejudiced against him that he can not obtain a fair and impartial trial, and this affidavit of two credible witnesses, that a change of venue must be granted.

"Now, the Supreme Court, in a number of cases, has defined what credible witnesses are and among these definitions, or among the holdings of the Supreme Court, they say that the witness should have a sufficient knowledge of the facts to which he has made the affidavit to be a credible witness.

"Now, the witness Foster and the witness Roberts both show that they haven't sufficient information upon which to base the facts, and the further fact that Mr. Roberts stated that he didn't intend to say that this de-

fendant couldn't get a fair and impartial trial. Mr. Foster didn't seem to understand the nature of the petition which he has signed, and he wouldn't say that the minds of the inhabitants of Stone County were prejudiced against the defendant. The witness Haley, however, has testified that in his community, that is, in Chalybeate Township, in the southeastern part of the county, such prejudice does exist. He states, however, that he hasn't been anywhere except at his own home town and to town and to mill. Now, according to my understanding, as to that section of the county, he would be a credible witness; however, as to the county at large and the feeling in the entire county he has shown no knowledge whatever. The witness Johnson, while he made an additional affidavit, shows on examination that the affidavit was prepared by one of the attorneys in the case, and then submitted to him, and he signed it. He shows that he has been nowhere but here and in Sylamore Township. The witness, Lamp, testifies to conditions on Northwest Township and Sylamore and Mountain View, the places where he has been. The witness Gower testifies that he has not been outside of Mountain View, and that he hasn't heard any one say that the defendant, Floyd Avey, can not get a fair and impartial trial in this county. The witness Herrington has heard the matter discussed in Sylamore and Northwest townships and seems to have heard very few people talk about it. The witness McGee says that the sentiment is usually against the defendant around Fox and Rushing where he has been. Now, there is no question, I think, of the witness Conditt in and around the three townships down there. Now, none of the witnesses in this case have shown a general knowledge of the conditions all over the county, and taking them all together, they have shown information—taking their affidavits and statements as true—they have shown more or less general knowledge of the conditions and of the prejudice existing in, I believe, all together they have shown the conditions in eight townships or communities in the county.

"I don't feel that unless a more general knowledge of the conditions existing in the county is shown—there being twenty-four townships in the county—that I would be authorized to grant this motion for a change of venue, and I would have to overrule it."

It appears from the court's statement that he was properly advised as to his duty and as to appellant's rights in the premises. The court limited the inquiry to an ascertainment of the credibility of the affiants as that term has been defined in frequent decisions of this court. He found the fact to be that these affiants, combined, were advised as to the state of public sentiment in only eight of the twenty-four townships in the county, and that, with information thus limited, they were not credible persons within the meaning of the statute when they made an affidavit embracing and including the entire county. We can not say that the court abused the discretion it was required to exercise in passing upon this question, nor can we say that he so far misapplied the testimony that his judgment must be reversed on that account. *Speer* v. *State,* 130 Ark. 457; *Hopson* v. *State,* 121 Ark. 87; *Dewein* v. *State,* 120 Ark. 302.

It was the theory of the State that immoral relations existed between appellant and one Vada Avey, a sixteen-year-old woman who had but recently married appellant's brother, a young man eighteen years of age, and that John Stevens, in whose home Vada Avey had been reared, sought to break up this illicit relation. Vada Avey had been living at appellant's home, working for his wife, and it was the theory of the State that he induced his younger brother to marry her.

The testimony on the part of the prosecution tended to show that appellant and Vada Avey left home in the morning, and remained together until about 3 o'clock in the afternoon, at which time the killing occurred, and that they had traveled only a few miles during this time. Appellant and Mrs. Avey were riding double on a horse, appellant being in front and Mrs. Avey behind,

While thus traveling, they met John Stevens and his son Garland, who were riding horseback and traveling in company with Roy and Zed Satterfield and Garfield Norman. When the parties met, Stevens said to Vada Avey, "Get down, I want to talk to you a minute." She answered, "No, Uncle John, I don't want to get down." But Stevens was insistent, and she dismounted. Appellant also dismounted. Thereafter the testimony is in sharpest conflict. According to the testimony on behalf of the State, appellant shot Stevens without any provocation except that he had been intercepted with Vada Avey, and an attempt was being made to induce her to leave him; and, further, that, after shooting Stevens, appellant turned on Norman, who begged for his life and assured appellant that he was his friend, but Norman was also killed. So far as the killing of Norman is concerned, the State's theory is that this was done to prevent Norman from being a witness against appellant for killing Stevens.

Vada Avey gave testimony favorable to appellant and tending to show that the killings were done in self-defense. Upon her cross-examination, she was asked if she was not appellant's mistress. This she denied. She was then asked if she had not slept with appellant at the home of Mrs. Wallace on a certain night. This she also denied. Thereafter the State called Mrs. Wallace and a Mrs. Brewer and proved by each of them, over appellant's objection, that they had seen appellant and Vada Avey in his bed together at Mrs. Wallace's house on the occasion about which Vada Avey had been asked. In instructing the jury the court referred to this testimony, and told the jury that their consideration of it should be limited to the determination of the existence of a motive, and that, if it did not tend to show the existence of a motive, it would not be proper to be considered for any purpose.

It is the insistence of learned counsel for appellant that the relationship of appellant with Vada Avey was

a collateral matter, and that, if it was proper to ask her at all concerning this relationship on her cross-examination to impeach her as a witness, her answer, whether true or false, was conclusive of the question so far as that trial was concerned.

This would be true if the relationship between Vada Avey and appellant was in fact a collateral matter, and the only purpose of the inquiry had been to impeach her character as a witness. But there was a deeper purpose, to-wit, the proof of a motive for the killing, and the proof of motive is not a collateral matter. *McCain* v. *State,* 129 Ark. 75.

This court has many times held that the State is not required to prove a motive to establish the guilt of one accused of homicide; but the court has also held that, as the absence of a motive is a circumstance tending to show innocence, the State may show the existence of a motive for taking the life of a decedent to be considered with other facts and circumstances in determining the guilt or innocence of the accused. *Hogue* v. *State,* 92 Ark. 323; *Walker* v. *State,* 138 Ark. 517, 528, 529; *Scott* v. *State,* 109 Ark. 391; *Ince* v. *State,* 77 Ark. 418; *Stokes* v. *State,* 71 Ark. 112, 116, 117.

No error appearing, the judgment is affirmed.

