DAME *v.* STATE.

Crim. 3969

Opinion delivered January 13, 1936.

*C. T. Bloodworth,* for appellant.

*Carl E. Bailey,* Attorney General, *J. F. Koone* and *Guy Williams,* Assistants, for appellee.

BUTLER, J. The appellant was indicted, tried and convicted, for the crime of arson and sentenced to imprisonment in the State penitentiary for a period of five years. The evidence tending to connect the appellant with the commission of the crime is to the following effect: The Randolph Hotel at Pocahontas, Arkansas, was burned in the early morning of April 28, 1935. The fire was discovered about 2:30 A. M., and apparently had started in the attic over room No. 121. Those who first discovered the fire observed coal oil dripping from the ceiling over one or more of the rooms. It was found that the fire fighting equipment had been tampered with and the hose cut, which interfered with the attempt to extinguish the flames, and the building was destroyed.

The appellant, Ben Dame, and his wife came to the town of Pocahontas and registered at the Randolph Hotel about 9:30 on the night of April 26th. Dame asked for a double room, which was assigned to him. He brought a suit case with him which was very heavy and which was afterwards found to contain three one-gallon jugs. He and his wife kept their room during the day of the 27th and checked out about seven or eight o'clock on the evening of that day. During the day of the 27th, Dame left Pocahontas and returned in the afternoon with Pauline Gearhart, a girl about seventeen years of age,

who is his wife's sister. The conveyance in which they were traveling stopped before it reached the hotel, and Dame there gave the girl some money, directing her to go to the hotel and secure a room. She accordingly registered at the hotel and was assigned room No. 121. Dame visited her in this room some time on the evening of the 27th and left with the understanding that he would return about ten o'clock. The attic could be reached through some "scuttle holes," one of which was in a closet which was a part of room 121 occupied by the Gearhart girl. This was one of the rooms where coal oil was observed to be coming through the ceiling. Pauline Gearhart was arrested a short time after the hotel was burned during the early morning hours of that day. Shortly thereafter, the appellant and his nephew, a youth under the age of twenty-one, were also arrested. Appellant was transported to Little Rock for questioning by James Pitcock, chief of detectives of the police department of that city. As a result of his examination by Pitcock, he signed a written confession to the effect that he had burned the hotel at the instigation of two men, one of whom had paid him a small sum and had agreed to pay about $500 for the burning of the hotel; that he made preparations to burn the hotel on the night preceding the fire; that he had in the suit case which he brought to the hotel three one-gallon jugs of coal oil and also a small bottle containing the same fluid; that he took the bottle and jugs through one of the scuttle holes into the attic of the hotel and from the bottle he sprinkled coal oil on the papers and rubbish there; that on the next day he hired a conveyance and went to where Pauline Gearhart was staying and brought her back to Pocahontas; that he got her consent to start the fire and then left and went with his nephew to a house where the fire fighting equipment was stored which he entered by making an opening in one of the walls of the building; that he there detached "the distributor" from the fire truck and cut the fire hose in several places; that he then went to the home of his mother-in-law, where he was when the fire was discovered and where he remained until morning.

Shortly after Pauline Gearhart was arrested, she also made a confession as to her part in the transaction, which was reduced to writing and signed by her. ·

Twelve assignments of error are preserved in the motion for a new trial and here argued for a reversal of the judgment.

1. When the grand jury was impaneled, appellant filed his written objection to the competency of George Promberger "because the said George Promberger is a complainant upon the charge of arson against this defendant; because the said George Promberger is a near relation to the party to whom the property destroyed by fire, or a large share thereof, belonged, for the burning of which this prisoner is being held on a charge of arson to await the action of the grand jury and is directly and indirectly interested in the prosecution." As to his qualifications, Promberger testified as follows: "I am a son-in-law of Ferd Spinnenweber, who is the owner of the Hotel Randolph which was burned. I have no interest in the hotel and am not a witness in the case in any way. If I should be taken and qualified as a grand juror, there is nothing that would prevent me from giving a fair and impartial consideration to the charge against the defendant, Ben Dame."

The trial court did not err in holding the juror qualified. Section 3005 of Crawford & Moses' Digest is decisive of this question. It provides: "Every person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been summoned or bound in a recognizance as such; and, if such objection be established, the person so challenged shall be set aside."

2. Appellant filed his petition and affidavit for a change of venue. The affidavit was signed by four supporting witnesses. On their examination by the trial court touching their qualifications to make the affidavit, it beveloped that they were not qualified electors of the county,

as they had not paid their poll taxes in the time prescribed by law. The examination, moreover, failed to show that the affiants had such a general knowledge of the sentiment of the people of the county generally as would qualify them as credible persons within the meaning of the statute. *Spear* v. *State,* 130 Ark. 457, 198 S. W. 113. When the court held that the affiants were not qualified to make the affidavit, appellant offered as witnesses on his motion several bystanders. The court refused to permit them to testify, over the objection and exception of the appellant. In this action the court was correct. "No requirement of the statute was met by the testimony of the three bystanders called by the appellant, and the court properly disregarded their evidence, as they testified in regard to the truthfulness of the recitals of the petition rather than as to the credibility of the affiants." *Whitehead* v. *State,* 121 Ark. 390, 181 S. W. 154.

3. On examination of the jurors on their *voir dire,* counsel for appellant, when certain of the jurors stated that they had heard the case discussed, asked them if the comments they had heard were unfavorable to the appellant. The court refused to permit the question to be answered, and this action of the court is assigned as error. It is sufficient, however, to say that the record does not show what was the expected answer.

4, 5 and 6. A witness was permitted to testify over the objection of appellant that the material of which the hotel was constructed would not easily catch fire. We are unable to see wherein prejudice could have resulted to the appellant by the admission of this testimony although it seems not to have been material. The lessee of the hotel was permitted to testify that he had suffered a loss of $6,000 in the fire by reason of the destruction of personal property. This testimony was competent as tending to rebut an insinuation to the effect that the lessee himself might have been the incendiary.

A witness, on cross-examination, was not permitted by the court to answer the question: "You are under indictment now at Corning for stealing hogs, are you not?" This question was improper, and the court was correct in

its holding. *Kincaid* v. *Price,* 82 Ark. 20, 100 S. W. 76; *Hunt* v. *State,* 114 Ark. 239, 169 S. W. 773.

7 and 8. As we view it, the most serious question presented is that contained in the seventh and eighth assignment of error. The seventh relates to the competency of the confession of appellant introduced in evidence. Before the introduction of the confession, testimony was taken relating to whether it was voluntary and made without the promise of reward or induced by threats of coercion. The testimony of appellant in this regard insinuates, without stating positively, that personal violence was suffered by him at the hands of the examining official. Appellant also stated that the confession was induced by a statement made to him to the effect that Pauline Gearhart and his nephew had confessed, and that he had as well do so, and also by the suggestion made to him by Mr. Pitcock as to how he would feel when he would be "in the long line at the penitentiary," while those who suggested to him and induced him to burn the hotel "would be sitting under an electric fan at Walnut Ridge." We see nothing in the last suggestion to carry with it the intimation of any threat, promise or compulsion, and as to the statements made relative to the confession, Pauline Gearhart and appellant's nephew had confessed, and the statements made to appellant were true. All those present when the confession was obtained testified with emphasis that no threats, hopes of reward or compulsion were made or used; that the confession was a voluntary act of appellant, and that he himself dictated the written confession to the stenographer.

It is insisted that the sheriff admitted a threat to the appellant during the course of examination. Under the circumstances, and in view of the language used by the sheriff to the appellant, we do not think that any threat was implied or so understood by appellant. The sheriff, in recounting the part taken by him in the examination, stated that, when appellant talked first one way and then another, "I said, 'Ben, if that is the way you are going to talk about it, we will give you all we can,'

and in about five minutes they called me back in there and he went ahead and made that statement." It seems clear there was no threat either express or implied, but a mere expression of impatience on the part of the sheriff caused by the contradictory statements appellant was making.

The court fully and fairly instructed the jury on the competency of the confession, directing it not to consider the same unless it believed beyond a reasonable doubt that appellant confessed voluntarily without promise of reward, and that his confession was free of compulsion or coercion. This instruction was more favorable to appellant than he was entitled. In order to establish the admissibility and competency of a confession, it is necessary only that the preponderance of the evidence establishes its free and voluntary nature.

Pauline Gearhart was called as a witness on behalf of the appellant and denied all complicity with, or knowledge of, the commission of the crime. She explained her presence in the hotel on the night of the fire by stating that she was there to keep a clandestine meeting with the appellant.

On cross-examination she was questioned without objection relative to statements she had made contradictory of her testimony which were to the effect that she had gone to the hotel at the suggestion of appellant and there agreed to, and did afterwards, set the hotel on fire. Her written confession was then permitted to be read to the jury over the objection and exception of the appellant. The written confession was immaterial, since it added nothing to, or took nothing from, the effect of her admissions on cross-examination.

It is well settled that one of the methods of impeachment is to show that the witness has made statements contradictory to the testimony given on the witness stand. The court so instructed the jury, and gave a cautionary instruction as to the confession of Pauline Gearhart, as follows:

"Gentlemen of the jury, the court wants to instruct you strictly that this statement is to be considered by you

only as going to the credibility of this witness, and the statement which she admits having made and saying it was true at the time she made it, but now says it is not true, is not to be considered by you in any way as tending to show the guilt or innocence of the defendant. It is only to be considered by you as testing the credibility of this witness, and you will be governed strictly by that rule. In other words, any statement made since the commission of the crime cannot under the law be used as evidence against this defendant. It is only introduced to show possible contradiction of what she said in the past and what she says now and testing her credibility as a witness now.''

9. We attach no significance to the complaint made in this assignment of error relative to a question asked appellant on cross-examination. ''Q. At the time they arrested you, they told you that Jack Dame (nephew of appellant) had confessed to breaking in with you in the fire house?'' This question was asked in connection with questions relating to the confession of appellant which he had repudiated on the witness stand. It seems to us that no prejudice could have resulted from the question propounded.

10. This assignment of error challenges the correctness of the court's instruction relating to the confession of appellant. This has already been noticed and was most favorable to the appellant.

11 and 12. Finally, error is assigned because of improper argument made by attorneys for the State. We do not set out the statements of counsel because we are fully satisfied that both statements were legitimate and fully warranted by the testimony in the case.

We find no reversible error, and the judgment is therefore affirmed.