CHENEY *v.* STATE.

4310                              172 S. W. 2d 427

Opinion delivered June 21, 1943.

*Wils Davis,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl. N. Williams,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Dock Cheney, was convicted of the crime of assault with intent to kill. Gabe Robinson was the victim of the assault. The jury assessed his punishment at 15 years in the state penitentiary, and from the judgment comes this appeal.

For reversal appellant urges (1) that the evidence was not sufficient to support the verdict, and the punishment assessed is excessive, (2) that the court erred in denying change of venue, and (3) that the cause should be reversed because one of the jurors was a nephew by marriage of the prosecuting witness, Gabe Robinson.

The record presents the following facts: Gabe Robinson, 56 years of age, had lived in Crittenden county approximately 36 years and owned and farmed 3,200 acres of land. On August 8, 1942, Gabe Robinson went to the store of Joe Levitch in Crawfordsville to collect for some corn sold·to Levitch, and while leaning on the show case writing a check, the defendant, Cheney, without warning, came up behind Robinson and assaulted him. Robinson testified: "He grabbed me and beat me with what I was told was a bottle of beer. He hit me with a bottle first. When it hit me in the back of the head— it was right in back of my ear—it staggered me and I couldn't see anything. Then he grabbed me and hit me with his fist. He beat me and I thought I hollered for help. Tommy Jones was standing there and said, 'Let him have it.' He told the people to stand back. I heard

that, but I didn't hear a word that Dock Cheney said. Then he quit beating me.'' .

Robinson was unarmed at the time and was not acquainted with his assailant. He was so severely beaten that he stayed in the hospital six days, was confined to his home thereafter for approximately three weeks and was advised by his doctor not to attempt to drive his car for six weeks. At the time of trial, he was still suffering pain in his head and testified ''when I stoop over I get blind.''

An eye-witness, Joe Levitch, testified, ''Yes, he came from behind and hit Mr. Robinson in the head and then he got a jar of peanut butter and hit him on the face. Mr. Robinson was bleeding all over. He took his hands and choked him down. I run outside for help. I didn't want him killed in my store. . . . Q. Did you see Tommie Jones? A. Yes, right behind them with his hand in his bosom. He said 'Everybody stay away. Let him have it Dock.' . . . Q. How did he come up to Mr. Robinson? A. From the back. Q. Did he give any warning as to what he was going to do? A. No, he didn't give any warning. When he hit him, the bottle busted in small pieces. . . . Q. What position was Mr. Robinson in when he hit him? A. He had his head down writing the check. . . . Q. Where did he hit him? A. Right over his ear. . . . Q. Was he wearing glasses at that time? A. Yes, I picked up his glasses. I found his glasses and picked them up. . . . Q. What else did he hit him with? A. A peanut butter jar. . . . A. He hit him until he busted it all to pieces and he choked him then until his tongue was hanging out. When he was hitting him he said, 'Who is hitting me?' and he was begging for mercy. . . . A. I was coming around and Tommie Jones was holding everybody back and he told me to stand back. He hollered, 'Put it to him, Dock, let him have it.' ''

Roy Hampton testified that he heard the bursting of the beer bottle when it struck Mr. Robinson's head; that it sounded like a pistol shot; that he was standing near the door and he went in immediately. ''Q. Where

was Dock Cheney—what part of Mr. Robinson's body was he beating on? A. He had him by the throat and was hitting him in the back of the head. . . . Q. What was the condition of Mr. Robinson's face and head? A. I saw it was bloody. I couldn't tell who it was. His eyes looked like they were going to fall out. Q. What was Mr. Robinson saying? A. He said that they were killing him. . . . Q. When Tommie Jones said for you to get back what did you do? A. I made another step and he cussed me and said, 'God damn it, get out.'"

Appellant was armed with a pistol.

Mike Levitch and James Black corroborated Mr. Robinson, Joe Levitch and Roy Hampton. Lonnie Anderson, witness for appellant, also corroborated these witnesses.

The appellant admitted the assault upon the prosecuting witness and gave as his reason that "I was mad" because Mr. Robinson had cursed in front of his wife. He denied that he intended to kill him. Robinson denied that he had cursed before appellant's wife.

There was other testimony of probative value which we do not deem it necessary to set out in detail here. It suffices to say that we have considered all the testimony and are of the opinion that the evidence, when given its strongest probative force in favor of the state, as we are required to do (*Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50) is amply sufficient to warrant the jury's finding that appellant assaulted the prosecuting witness, Robinson, with the intent to kill him. The testimony was sufficient to show malice on the part of the appellant. Malice may be either express or implied. The court properly instructed the jury that before they could convict the defendant of assault with intent to kill it must appear from the testimony, that appellant would have been guilty of either murder in the first or second degree, had the victim of his assault died. In *Allen* v. *State,* 117 Ark. 432, 174 S. W. 1179, this court held (quoting headnote 2): "If an assault be committed with the specific intent to take life, and with a deadly weapon,

under circumstances which show implied malice, it will be sufficient to constitute the crime of an assault with intent to kill, even though there be no express malice; there must be malice, either express or implied, but either is sufficient.''

Appellant's excuse for his assault upon Robinson that he was ''mad'' because Robinson had cursed in front of his wife some days before, we think was not sufficient provocation, if death had resulted from the assault, to have reduced the grade of the offense from murder to manslaughter. *Clardy* v. *State,* 96 Ark. 52, 131 S. W. 46; *Young* v. *State,* 99 Ark. 407, 138 S. W. 475, and *Jerrall* v. *State,* 107 Ark. 87, 154 S. W. 500.

On the question of appellant's intent at the time of the assault, ''the jury should take into consideration the manner of the assault, the nature of the weapon used, the manner in which it was used, the statements of defendant, and all other facts and circumstances tending to show the state of defendant's mind.'' *Davis* v. *State,* 115 Ark. 566, 173 S. W. 829.

In fixing the punishment for the crime of assault with intent to kill, our lawmakers, in § 2961, Pope's Digest, have very wisely given to the jury much latitude. It is provided in that section that the punishment may be fixed at ''imprisonment in the penitentiary not less than one nor more than 21 years,'' the evident purpose being that the punishment in each case should be fixed in accordance with the facts.

We find nothing in this record to show that the jury abused the discretion accorded it in fixing the punishment under this section of the statute, and we think no error is shown in this regard.

■ We cannot agree with appellant's contention that the court erred in denying change of venue. Appellant's petition for change of venue was supported by the affidavits of two witnesses, J. T. Cockrill and E. E. Smith. On February 22, 1943, the trial court heard the cause upon appellant's petition, the affidavits and oral testimony of Cockrill and Smith, and denied the petition.

From the testimony of the affiants it appears that there are twelve townships in Crittenden county. The effect of Mr. Cockrill's testimony may be summed up in his own words as follows: "Q. You say that out of the four townships you mentioned that a jury of twelve men couldn't be gotten that would give these men a fair and impartial trial? A. That's what I believe. Q. You don't know about the other eight townships? A. No." We quote from the testimony of Mr. Smith: "Q. You confine your activities politically in the township of Crawfordsville—you were a candidate yourself for constable? A. That's right. Q. Are you confining your testimony to the voters in Crawfordsville township. A. Mostly. Q. You don't know the feeling generally of the people over the rest of the county? A. Just by hearsay."

We think the testimony of these two witnesses, upon which appellant relies for change of venue, falls far short of the requirements of our statutes (§§ 3917 and 3918, Pope's Digest). The sections, *supra,* contemplate that before an affiant can qualify under the statute he must have personal knowledge of the prejudice existing against the defendant throughout the entire county, and not just portions thereof. Knowledge by hearsay is not sufficient. In one of the most recent cases on this question, *Bailey* v. *State,* 204 Ark. 376, 163 S. W. 2d 141, we said: "This court recently said: 'This court has ruled that, in order for an affiant to qualify as a credible person under the statute, he must be cognizant of the prejudice existing throughout the whole county, and not merely in portions thereof.' *Hedden* v. *State,* 179 Ark. 1079, 20 S. W. 2d 119. The following cases are cited in support of the above rule: *Dewein* v. *State,* 120 Ark. 302, 179 S. W. 346; *Speer* v. *State,* 130 Ark. 457, 198 S. W. 113; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386; *Mills* v. *State,* 168 Ark. 1005, 272 S. W. 671. See, also, *Avey* v. *State,* 149 Ark. 642, 233 S. W. 765. 'The statute contemplates that the subscribing witnesses shall have fairly accurate information concerning the state of mind of the inhabitants of the entire county toward the defendant.' *Speer* v. *State, supra.* This case also holds that it has been uniformly

held that unless the trial court has abused its discretion in overruling a motion for change of venue, the order is conclusive on appeal. To support this rule, the following cases are cited: *Bryant* v. *State*, 95 Ark. 239, 129 S. W. 295; *Ford* v. *State*, 98 Ark. 139, 135 S. W. 821; *McElroy* v. *State*, 100 Ark. 301, 140 S. W. 8. See, also, *Dame* v. *State*, 191 Ark. 1107, 89 S. W. 2d 610.''

We conclude, therefore, that the court did not err in denying change of venue.

■ Finally, it is argued that the cause should be reversed because a nephew by marriage of the prosecuting witness, Robinson, was one of the jurors, and this was the sixth ground in appellant's motion for a new trial.

The record reflects that appellant was tried and convicted on February 22, 1943. The motion for new trial was filed February 24, following, and overruled by the court on the same day. We find nothing in the record to indicate that appellant offered any proof, at the hearing February 24, in support of his allegation in his motion for a new trial that one of the jurors was a nephew, by marriage, of the prosecuting witness. On March 26, 1943, it appears that appellant filed two affidavits in support of his contention. It thus appears that these two affidavits were filed more than a month after appellant's motion for a new trial had been overruled. There is nothing in the record that indicates that these affidavits were ever called to the attention of the trial court, that the court ever ruled on them, that any proof in support of these affidavits was ever presented to the court, or that the court was in session at the place of trial, at the time these affidavits were filed.

The motion for a new trial was overruled February 24, 1943, appellant granted an appeal to this court, bond allowed, and fifty-five days allowed to prepare and file bill of exceptions on that same day. It further appears that appellant's bond for appeal was approved and filed March 9, 1943, or prior to the filing of the two affidavits, *supra*, on March 26, 1943. In this state of the record we are clearly of the opinion that the court did not err in

denying motion for new trial, which had been overruled more than a month before the affidavits were filed.

The proceeding here was in the nature of a motion for a new trial for newly-discovered evidence. The trial court has a wide discretion in passing on motions for a new trial in such matters, and we cannot say that such discretion was abused in overruling the motion in the instant case. *Thornsberry* v. *State,* 192 Ark. 435, 92 S. W. 2d 203.

No error appearing, the judgment is affirmed.