CRAIG *v.* STATE.

4304                                      172 S. W. 2d 256

Opinion delivered June 21, 1943.

*Bert B. Larey,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

KNOX, J. Convicted of the crime of assault with intent to kill, appellant prosecutes this appeal, and urges as grounds for reversal, (1) that the evidence is insufficient to sustain the verdict because (a) the specific intent to kill is not established thereby, and (b) if death had resulted appellant could not have been convicted of murder, and (2) that the court erred in refusing to give a certain requested instruction.

Viewing the testimony as we must in the light most favorable to the state (*Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50), the record discloses:

Appellant and one Fred Hedgecock, the victim of the assault were both employed in the operation of a gravel pit. Hedgecock was assistant foreman. Appellant stated to a deputy sheriff that he became exceedingly angry at Hedgecock some several hours before the time of the assault, on account of the fact that Hedgecock had severely taken him to task for, and unjustly accused him of, having been asleep at his post of duty. At and immediately before the time of the assault appellant and Hedgecock were both on a railroad car which was being loaded, and was already partially filled with gravel. Appellant, in compliance with directions from Hedgecock, was using a shovel in an effort to keep the gravel spread evenly over the car. The train, of which the car was a part, was being switched for the purpose of spotting a car to be loaded with gravel, and Hedgecock was acting as flagman directing the switching movement. A disinterested witness testified that she observed appellant and Hedgecock talking, but could not hear what was said. Hedgecock testified that no words were spoken between them, but appellant testified that Hedgecock abused and cursed him and accused him of loafing, and threatened to have him discharged. There is evidence that Hedgecock had walked to the end of the car, and with his back turned toward appellant, was in the act of getting off,

at which time appellant took a few steps forward and without warning struck Hedgecock across the head with the shovel, the blow being accompanied by sufficient force and violence to knock him out of the car, and cause him to fall on a platform at the end thereof, and produce a severe fracture of his skull, which rendered him unconscious at the time, which condition continued for about sixty days, during which time and for thirty days thereafter he was confined in a hospital.

In order to sustain the charge of assault with intent to kill proof of two distinct elements are necessary: (1) a specific intent to take life, and (2) facts which would have been sufficient to have sustained a conviction of murder if death had resulted from the assault. *Lacefield* v. *State,* 34 Ark. 275, 36 Am. Rep. 8; *Chrisman* v. *State,* 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44; *Chowning* v. *State,* 91 Ark. 503, 121 S. W. 735, 18 Ann. Cas. 529; *Francis* v. *State,* 189 Ark. 288, 71 S. W. 2d 469.

Under some circumstances one may be guilty of murder, although he may lack the intention to take life; (*Ballentine* v. *State,* 198 Ark. 1037, 132 S. W. 2d 384), and likewise one may intend to kill under circumstances where the killing would not constitute murder, as in cases of manslaughter or justifiable homicide. Proof of both the intent to kill and facts sufficient to establish murder had death resulted are, therefore, essential to sustain a conviction.

In the case of *Lacefield* v. *State, supra,* Mr. Justice HARRISON, in discussing the character of proof required to establish the intent, says: "Whilst it is true that every person is presumed to contemplate the ordinary and natural consequences of his acts, such presumption does not arise where the act fails of effect, or is attended by no consequences; and where such act is charged to have been done with a specific intent, such intent must be proved, and not presumed from the act."

Although the state is required to prove that the defendant actually intended to kill, it need not depend upon declarations made by the defendant to establish such

fact. While the intent to kill cannot be implied as a matter of law, it may be inferred from facts and circumstances of the assault, such as the use of a deadly weapon in a manner indicating an intention to kill, or an act of violence which ordinarily would be calculated to produce death, or great bodily harm. In determining whether or not the intent to kill should be inferred, the trier of the facts may properly consider the character of the weapon employed and the way it was used, the manner of the assault and the violence attendant thereon; the nature, extent and location on the body of the wound inflicted, if any; the state of feeling existing between the parties at and anterior to the difficulty; statements of the defendant, if any; and all other facts and circumstances tending to reveal defendant's state of mind. *Chrisman* v. *State,* 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44; *Beavers* v. *State,* 54 Ark. 336, 15 S. W. 1024; *Davis* v. *State,* 115 Ark. 566, 173 S. W. 829; *Killian* v. *State,* 184 Ark. 239, 42 S. W. 2d 12; *Higgins* v. *State,* 171 Ark. 1187, 285 S. W. 359. It is not essential that the intent should have existed for any particular length of time before the assault, as it may be conceived in a moment. *Hankins* v. *State,* 103 Ark. 28, 145 S. W. 524; *Evans* v. *State,* 147 Ark. 69, 226 S. W. 1063; *Slaytor* v. *State,* 141 Ark. 11, 215 S. W. 886.

The inference drawn by the jury in this case that the defendant entertained the specific intent to kill is amply supported by evidence of the circumstances surrounding and connected with the assault.

Declarations that in order to constitute the crime of assault with intent to kill the circumstances must be such as to have sustained a conviction of murder if death had resulted are but statements that the assault must have been made without justification or excuse and with malice, express or implied, for whether an unlawful homicide constitutes the crime of murder depends upon the presence of malice express or implied. *Anderson* v. *State,* 5 Ark. 444; *Reed* v. *State,* 102 Ark. 525, 145 S. W. 206; *Dame* v. *State,* 164 Ark. 430, 262 S. W. 313; *Stepp* v. *State,* 170 Ark. 1061, 282 S. W. 684; *Forrest* v. *State,*

172 Ark. 1176, 288 S. W. 925. Defendant's ill will or hatred for the deceased may establish express malice, but malice may be implied without the showing of personal ill will. *Jett* v. *State,* 151 Ark. 439, 236 S. W. 621.

Under the express provisions of our statute "malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition." Pope's Digest, § 2967.

Even if the evidence here is not sufficient to establish express malice (a question we need not and do not decide), it unquestionably supplies a *quantum* of proof equal to that adduced in prior cases and from which it was held malice could be implied. *Clardy* v. *State,* 96 Ark. 52, 131 S. W. 46; *Young* v. *State,* 99 Ark. 407, 138 S. W. 475; *Jerrall* v. *State,* 107 Ark. 87, 154 S. W. 500. It follows, therefore, that if death had ensued as a result of this assault the evidence would have warranted a conviction of murder.

Appellant argues that the court erred in refusing to give a certain requested instruction. Apparently the rule of law contained in this instruction is fully covered in other instructions which were in fact given. If this, however, were not the case, the refusal of the court to give this instruction nevertheless would not be subject to review for the reason that no assignment of error based thereon is set out in the motion for new trial. *Carothers* v. *State,* 75 Ark. 574, 88 S. W. 585; *Johnson* v. *State,* 84 Ark. 95, 104 S. W. 929.

Finding no error, the judgment is accordingly affirmed.