LEWIS *v.* STATE.

4391                                        189 S. W. 2d 641

Opinion delivered October 1, 1945.

*Bon McCourtney* and *Claude B. Brinton,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J.    Appellant was charged by information with the crime of assault with intent to kill "H. J. Bosler with a deadly weapon, to-wit: a knife." He was found guilty by the jury and his punishment fixed at one year in the state penitentiary. For reversal of the judgment, appellant alleges five grounds in his motion for a new trial. The first four questioned the sufficiency of the evidence, and the fifth alleges that "the court erred in permitting the introduction of the knife in the evidence without sufficient showing that said knife was used in the assault."

The facts when viewed in the light most favorable to the State (*Cheney* v. *State*, 205 Ark. 1049, 172 S. W. 2d 427) are: At about 9:30 p. m., after attending a picture show with two ladies in the city of Jonesboro, the victim of appellant's assault, Mr. Bosler, and the two ladies got in Bosler's car. Bosler was in the rear seat, and one of the ladies was driving, when they noticed appellant driving a car on the wrong side of the street. There was another Negro in the car with appellant. Bosler testified: ''When they got close enough for me to see who they were, there was Ralph Donelson and Frank Lewis, and Frank Lewis was so drunk he was staggering. I went and got out of my car and got my gun, which was in its holster, out of glove box, and I stepped around and the gun was down beside me and I asked Frank what was wrong, and he said 'There's not a God-damned thing wrong with me,' and I said 'You're under arrest,' and he said 'You can't arrest me, I haven't done anything.' I said 'Come on, Frank, get in the car,' and he refused to do it. He said I couldn't arrest him as he hadn't done anything. I not only had the right as mayor of Jonesboro to arrest him, but I also have a duly filed commission in the sheriff's office just the same as any deputy sheriff. . . . Frank came towards me and pushed me and I fell and when I got up he started again toward me. My gun was still in its holster, and I hit him on the side of the head and knocked him down. He came upon me the second time after he got up and I struck him with the gun sideways. He was cursing all that time.'' Appellant had his hands behind him as he advanced on Bosler.

During the encounter, appellant cut Bosler with a knife. Bosler testified: ''There was a cut place on my wrist here. I went to the doctor and had him dress the wound on my right wrist; the cut was about three-quarters of an inch long and it went clear to the bone. The wound has healed, but there still is a scar there and the bone is welted and swollen from the knife point striking the bone. There was a wound here, right about where my finger is, about half an inch deep. When I took off my

coat and looked at it, I found three cuts, but the padding on my coat kept the knife from going through.''

Appellant finally got in the Bosler car and after they had reached the police.station, he was searched and a white-handled knife was found in his pocket. One of the ladies testified that Mr. Bosler told appellant, ''You're under arrest; come and get in the car. . . . He (appellant) had something in his hand. I said 'Look out, he has something in his hand,' and when I got out of the car, Mr. Bosler had knocked him down to the ground, and when he started getting up—when this .Negro man started getting up—he had this knife in his hand. I could see the knife in his hand, and Mr. Bosler told him—he got him by the arm when he started to get to his feet, and this other colored man with him said, 'This is the mayor. Come on and get in the car and let's go on with the mayor,' and he wouldn't and he kept resisting arrest. . . . I knew that he (appellant) had been drinking because I could tell from the way he was cursing—the way he was talking; I could tell that.''

Appellant and his witnesses gave a different version of the encounter which made a disputed question of fact for the jury. The court fully instructed the jury on the law governing the case and there is no complaint as to any instructions given. In its instructions, the court declared the law as announced many times by this court in a case of assault with intent to kill, such as is presented here.

One of our most recent cases is that of *Craig* v. *State*, 205 Ark. 1100, 172 S. W. 2d 256, wherein we said: ''In order to sustain the charge of assault with intent to kill proof of two distinct elements are necessary: (1) a specific intent to take life, and (2) facts which would have been sufficient to have sustained a conviction of murder if death had resulted from the assault. *Lacefield* v. *State*, 34 Ark. 275, 36 Am. Rep. 8; *Chrisman* v. *State*, 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44; *Chowning* v. *State*, 91 Ark. 503, 121 S. W. 735, 18 Ann.

Cas. 529; *Francis* v. *State,* 189 Ark. 288, 71 S. W. 2d 469.
. . . Although the State is required to prove that the defendant actually intended to kill, it need not depend upon declarations made by the defendant to establish such fact. While the intent to kill cannot be implied as a matter of law, it may be inferred from facts and circumstances of the assault, such as the use of a deadly weapon in a matter indicating an intention to kill, or an act of violence which ordinarily would be calculated to produce death, or great bodily harm. In determining whether or not the intent to kill should be inferred, the trier of the facts may properly consider the character of the weapon employed and the way it was used, the manner of the assault and the violence attendant thereon; the nature, extent and location on the body of the wound inflicted, if any; the state of feeling existing between the parties at and anterior to the difficulty; statements of the defendant, if any; and all other facts and circumstances tending to reveal defendant's state of mind. *Chrisman* v. *State,* 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44; *Beavers* v. *State,* 54 Ark. 336, 15 S. W. 1024; *Davis* v. *State,* 115 Ark. 566, 173 S. W. 829; *Killian* v. *State,* 184 Ark. 239, 42 S. W. 2d 12; *Higgins* v. *State,* 171 Ark. 1187, 285 S. W. 359. It is not essential that the intent should have existed for any particular length of time before the assault, as it may be conceived in a moment. *Hankins* v. *State,* 103 Ark. 28, 145 S. W. 524; *Evans* v. *State,* 147 Ark. 69, 226 S. W. 1063; *Slaytor* v. *State,* 141 Ark. 11, 215 S. W. 886." See, also, *Davis* v. *State,* 206 Ark. 726, 177 S. W. 2d 190; and *Wilhite* v. *State,* 206 Ark. 887, 178 S. W. 2d 55.

Here we think the jury was warranted in finding that appellant entertained the intent to kill Bosler at the time he attacked and cut him with a knife.

There was no error in admitting the knife in evidence. It was positively identified by one of the ladies as being the one which she saw in appellant's hand during the encounter, and later it was taken from appellant's pocket at the police station.

Finding no error, the judgment is affirmed.