## JETT v. STATE.

### Opinion delivered January 23, 1922.

1. HOMICIDE—PROOF THAT DECEASED · HAD BEEN CONVICTED . OF ROBBERY.—In a prosecution for murder while it is competent to prove deceased's general reputation as a circumstance to be considered by the jury in determining who was the aggressor in the fatal encounter, it was ᵀot error to exclude a record showing that deceased had been convicted of robbery in another State.

2 HOMICIDE—REFUSAL TO REPEAT INSTRUCTIONS.—In a prosecution for murder it was not error to refuse an instruction fully covered by another instruction given.

3. ARREST—AUTHORITY TO MAKE.—Where defendant was not an officer, the fact that officers left a warrant of arrest with him to be served on deceased did not clothe defendant with authority to arrest deceased, who was under no duty to submit to arrest and was justified in offering such force and resistance to the attempt to arrest him as was reasonably necessary.

4. HOMICIDE—RIGHT OF OFFICER TO KILL MISDEMEANANT.—An officer clothed with the authority of a valid warrant of arrest would have no right to kill one charged with a misdemeanor, except in self-defense.

5. HOMICIDE—AUTHORITY OF OFFICER.—An officer does not become an aggressor in attempting to make an arrest, and is authorized to use such force as is reasonably necessary to overcome resistance, and if in doing so he kills the person resisting he is blameless.

6. HOMICIDE—INSTRUCTION ON SELF-DEFENSE.—Where defendant, assuming without authority to act as an officer, undertook to arrest deceased, and killed him, an instruction that if deceased at the time was making a demonstration as if to draw a weapon or to attack defendant for any purpose other than to prevent defendant from attacking him, and it so appeared to defendant under the circumstances as made it reasonable for him to entertain such belief, and, acting in good faith and without fault or carelessness on his part, defendant fired the fatal shot, he was not guilty of any crime, *held* sufficient to present the theory of self-defense.

7. HOMICIDE—INSTRUCTION AS TO MURDER.—Where one, wrongfully assuming to act as an officer, killed the person he undertook to arrest, an instruction that if defendant, being armed with a deadly weapon, went to the deceased for the purpose of arresting him on a warrant charging him with a misdemeanor, and intended to make the arrest by using such weapon, if it became necessary to subdue deceased, and deceased did no more than refuse to submit to defendant and be arrested, and defendant shot and killed him for that purpose alone, then defendant is guilty of murder in the first or second degree, *held* correct.

8. HOMICIDE—MALICE.—Malice in its legal sense means a motive or purpose from which flows an act injurious to another person, done intentionally and without lawful excuse. and is not confined to an intention to take away the other's life.

9. HOMICIDE—PRESUMPTION OF MALICE.—Where defendant, without authority, undertook to arrest another and killed him merely because he resisted arrest. the law implies malice, even though defendant believed he had authority to make the arrest; and his

mistaken belief that he had a right to make the arrest may be considered in assessing punishment, but for no other purpose.

Appeal from Craighead Circuit Court; Lake City District; *R. E. L. Johnson*, Judge; affirmed.

*O. H. Hurst, J. F. Johnston* and *E. L. Westbrook*, for appellant.

1. The authenticated copy of the record of Gibson's indictment for and plea of guilty to the crime of robbery in the State of Missouri ought to have been admitted. It was a material issue under appellant's plea of self-defense, as to whether he or the deceased was the aggressor, and the general reputation of each for peace and quietude was admissible. 147 Ark. 524.

2. The three instructions requested by the appellant were not covered by any instruction given and should not have been refused. 93 Ark. 313.

*J. S. Utley*, Attorney General, *Elbert Godwin* and *W. T. Hammock*, Assistants, for appellee.

1. The authenticated copy of the Missouri record was not admissible. He had the right to show the general reputation of the deceased and show that he was of a violent, turbulent and dangerous character, but that can not be shown by proof of specific acts of law violations. 3 Enc. of Ev. 27; Wharton on Homicide, 3 Ed., § 271; 13 R. C. L. 919-920; 88 Ark. 261; 100 *Id.* 561.

2. It was proper to instruct the jury to the effect that a private person has no authority to arrest one charged with a misdemeanor, etc.

The instruction on the law of self-defense was also correct. If the defendant went armed with a deadly weapon to arrest the deceased on a warrant charging him with a misdemeanor, intending to make the arrest by using the weapon if it became necessary to subdue him, and if he shot and killed the deceased for the reason alone that he refused to submit to the defendant and be arrested, defendant was unquestionably guilty of murder in the first or second degree.

Appellant's theory of the case was thoroughly covered by the court's instruction numbered 11, and it was not error to refuse his requested instruction 1, 2 and 3.

Appellant entered only a general objection to instruction 14. If it was ambiguous or misleading, he should have made specific objection. 92 Ark. 237; 131 *Id.* 487; 59 Ark. 422.

SMITH, J. Appellant was convicted of murder in the second degree, and given a sentence of ten years in the penitentiary, and has appealed.

A warrant of arrest had been issued by a justice of the peace for the arrest of Clyde Gibson on a charge of disturbing the peace. Two officers undertook the service of this warrant, but they failed to find Gibson, and left the warrant with a Mr. Allen with the request that he give it to appellant for service. When the warrant was offered appellant, he at first declined to accept it, for the reason, as stated by him, that he was unarmed, and he knew Gibson to be a dangerous man, but he agreed to make the arrest if provided with a pistol for defensive purposes. A pistol was given appellant, and he accepted the warrant and undertook to serve it. Appellant found Gibson and read the warrant to him. Gibson made the statement that he would not submit to arrest except by a "real officer." The testimony is in conflict as to what happened after the warrant was read. According to the testimony on behalf of the State, Gibson started to walk away after the warrant had been read. Appellant told him to stop or he would kill him. Gibson continued to walk away, and appellant again told him to stop or he would kill him. Gibson continued to walk away, when appellant shot and killed him. According to appellant, he told Gibson to stop, that he had to do his duty, and that Gibson then stopped, turned suddenly around and threw his hand to his hip pocket, when, thinking Gibson was about to shoot him, he fired the fatal shot. It was shown that Gibson was unarmed at the time.

Appellant testified that he attempted to arrest Gibson because he thought it was his duty to do so, but that he used no force to effect the arrest until Gibson— as appellant thought—attempted to draw his pistol, when he fired to protect himself.

Appellant was permitted to offer testimony to the effect that Gibson bore the reputation of being a quarrelsome, turbulent and dangerous man. But the court refused to permit him to offer in evidence an authenticated copy of the judgment of a circuit court in Missouri sentencing Gibson to the penitentiary upon a plea of guilty to a charge of robbery. Error is also assigned in giving and in refusing to give certain instructions.

No error was committed in refusing to admit the excluded record of Gibson's plea of guilty. Inasmuch as appellant pleaded self-defense, it was competent for him to show Gibson's general reputation for peace and quietude as a circumstance to be considered by the jury in determining who was the aggressor in the fatal encounter. But the testimony was properly limited to proof of general reputation. It is not competent in such cases to prove specific acts of violence or bad conduct. *Hardgraves* v. *State,* 88 Ark. 261; *Coulter* v. *State,* 100 Ark. 561; *Campbell* v. *State,* 38 Ark. 498; *Palmore* v. *State,* 29 Ark. 248; *Carter* v. *State,* 108 Ark. 124; *Trotter* v. *State,* 148 Ark. 466.

Appellant requested three instructions, all of which were refused. The first of these instructions was fully covered by another instruction given by the court. The second and third instructions requested by appellant read as follows:

"2. You are further instructed that, should you find the defendant acting in good faith, fully believing that he was a legal officer and had a right to serve warrant and make arrest, and in so doing killed deceased, acting upon such actions, words or demonstration of deceased as would cause a reasonable person to believe

the killing of deceased necessary to protect his own life, then you will find the defendant not guilty.

"3.  You are instructed that, should you find the defendant, acting under the belief that he was authorized to serve the warrant on defendant and make the arrest, and in the discharge of what he believed to be his duty, deceased made a demonstration as if to draw a weapon, if you find such demonstration was made by deceased, the defendant, believing he would sustain great bodily harm or loss of life, defendant, without carelessness or negligence on his part, was justified in shooting deceased to protect himself."

Over appellant's objections the court gave instructions to the effect that appellant had no right to serve the warrant on Gibson, which was offered in evidence, and, over appellant's objections, gave instructions numbered 4 and 5 as follows:

"4.  It is admitted in the record that the defendant was not an officer, and you are therefore instructed that he had no right or authority to serve the warrant in evidence on Clyde Gibson, deceased.

"5.  You are instructed that a man cannot bring about a quarrel or encounter and then justify himself under the law of self-defense unless he in good faith endeavored to abandon the difficulty and did all within his power, consistent with his safety, to avert the necessity of the killing before the mortal injury was inflicted; and, if the jury believes from the evidence in the case that the defendant, being armed with a deadly weapon, went to the deceased for the purpose of arresting him on a warrant, charging him with a misdemeanor, and intended to make the arrest by using such weapon, if it became necessary to subdue deceased, and that deceased did no more than refuse to submit to defendant and be arrested, and that defendant shot and killed him for that reason alone, then you are instructed that defendant is guilty of murder in the first or second degree as defined to you in other instructions given in this case."

In addition, the court gave the usual instructions given in homicide cases where the plea of self-defense is interposed, but in these instructions made no reference to the fact that appellant claimed to have been acting as an officer. In other words, as the case was submitted to the jury appellant was stripped of any protection growing out of the fact that he believed he was discharging his duty and was within his legal rights in attempting to arrest Gibson. The correctness of this theory presents the real question in the case.

Objections were made to certain other instructions given, which we do not set out, as our discussion of the instructions which we do set out answers those objections.

It is conceded that appellant was not an officer, and that the action of the officers in leaving the warrant to be served by him clothed him with no authority to arrest Gibson; and this is, of course, the law. Appellant was a volunteer, and Gibson was under no legal duty of submitting to the arrest. Upon the contrary, Gibson was within his legal rights in refusing to submit to arrest, and in offering such force and resistance to the attempt to arrest him as was reasonably necessary to accomplish that end. *Bruce* v. *State,* 68 Ark. 310; *Johnson* v. *State.* 58 Ark. 57; *Roberson* v. *State,* 53 Ark. 516; *Appleton* v. *State,* 61 Ark. 590; 1 Bishop's New Criminal Law, § 868.

The charge against Gibson was a misdemeanor, and even an officer properly clothed with the authority of a valid warrant of arrest would have had no right to kill Gibson to prevent his escape. As is said in many cases, it is better that the misdemeanant be suffered to escape rather than that he be killed to prevent his escape, as he may be taken on another day. *Thomas* v. *Kinkead,* 55 Ark. 502. But there is a difference in such cases between the right to kill the misdemeanant to prevent his escape and the right to kill him to prevent him from killing the officer or inflicting great bodily harm upon the officer who is attempting to make the arrest.

If the arrest is authorized, it is the duty of the officer to make it, and it is the duty of the misdemeanant to submit to the arrest. In such cases the officer does not become the aggressor in the sense in which that term is used in designating the moving party in encounters between private citizens. The officer never becomes the aggressor in that sense, because it is always his duty to make the arrest, and in the discharge of that duty he had the right to advance and to overcome such resistance as is encountered, using no more force than is reasonably necessary for that purpose, and if, in doing this, he kills the person he thus seeks to arrest, he is blameless, for he did no more than his duty required him to do. *Gillespie* v. *State*, 69 Ark. 573; *Smith* v. *State*, 59 Ark. 132. But the person thus protected is the officer engaged in the discharge of an official duty. Appellant was not an officer, and had no duty to discharge. Gibson was under no duty to submit to the arrest. Appellant had no right to use such force as was necessary to overcome Gibson's resistance. Upon the contrary, Gibson had the right to use such force as was reasonably necessary to protect himself from the arrest, and, to the extent that appellant sought to effect Gibson's arrest, just to that extent was he the aggressor, because he was acting without right. Of course, the mere attempt on appellant's part to arrest Gibson gave Gibson no right to kill appellant, and, if Gibson attempted to shoot appellant. not to protect himself from danger or injury, but only from threatened arrest, then he was about to use an excess of force, and, to the extent of this excess, became himself the aggressor, and against that aggression appellant would have had the right of self-defense. This feature of the case was covered by instruction numbered 11, which dealt with the question of the appearance of danger. In this instruction the jury, among other things, was told that "if the deceased at the time the defendant shot him was making a demonstration as if to draw a weapon or to use a weapon and to attack

defendant for any purpose other than to prevent the defendant from attacking him, and it so appeared to the defendant under such circumstances as made it reasonable for him to entertain such belief, acting in good faith and without fault or carelessness on his part, defendant fired the fatal shot,'' that he was not guilty of any crime. The remainder of the instruction and other instructions given enlarged upon this theme.

It is insisted that, inasmuch as malice is an essential ingredient of murder in either the first or second degree, the court was in error in giving instructions numbered 3 and 5, for the reason that these instructions excluded from the jury, in determining whether malice in fact existed on the part of appellant, any consideration of appellant's belief that he had the right to make the arrest, if he honestly entertained that belief, even though he was in fact mistaken in his belief.

Upon this feature of the case it may be said that appellant's misapprehension of his duty in the premises could not enlarge his own rights, nor abridge those of Gibson. His mistake—if he were honestly mistaken—might have been taken into account by the jury in assessing his punishment; but no instruction to that effect was requested, and his mistaken belief was competent for no other purpose.

There may have been here an entire absence of personal ill-will or hatred on the part of appellant toward Gibson, but it does not follow, on that account, that the killing was not malicious. The existence of such feelings, if proved by the testimony, may show the presence of express malice; but malice need not be express. It may be implied. And, in order for it to be implied, it is not essential that a showing of personal ill-will be made.

The term malice has been many times defined by this and other courts. In Michie on Homicide, § 11, many of these definitions are collected. It is there said: ''Malice when attempted to be defined has been necessarily given a

more comprehensive meaning than enmity or ill-will or revenge, and has been extended so as include all those states of mind under which the killing of a person takes place without any cause which will in law excuse, justify or extenuate the homicide. The term in its legal sense means a motive or purpose from which flows the act injurious to another person, done intentionally and without lawful excuse. Malice, as appended to the offense of murder, need not denote, and is not restricted to, spite, malevolence, hatred or ill-will to the person killed; nor to a killing in cold blood, as with a settled design or premeditation, nor to a wicked design against the person killed. But malice as essential to the crime of murder has a more extended meaning, and is, or better say is characterized and manifested by, the intentional doing of a wrongful act towards another without legal excuse or justification, which may probably result in depriving such person of his life, and is not confined to an intention to take away the life of such person. It is said that malice includes not only anger, hatred, and revenge, 'but every other unlawful and unjustifiable motive.' ''

If, therefore, as was said in instruction numbered 3, appellant ''shot and killed Clyde Gibson, because he would not submit to being arrested,'' or, as was said in instruction numbered 5, if ''deceased did no more than refuse to submit to defendant and be arrested, and (that) defendant shot and killed him for that reason alone,'' then the law imputed malice, or, as is more commonly said, malice is implied, and the court did not err in so telling the jury. This is true because, if the circumstances hypothetically stated were true, appellant was doing an unlawful and wrongful act and one which infringed upon Gibson's legal rights, and his persistence in this wrong to the point of killing Gibson was malice, and its character as such was not changed by his mistaken belief on the subject.

The following cases discuss the propositions here involved, and support, we think, the conclusions here an-

nounced. *Keady* v. *People,* 66 L. R. A. 353; *Roberson* v. *State,* 52 L. R. A. 751; *State* v. *Durham,* 5 L. R. A. (N. S.) 1010; *State* v. *Horner,* 4 Ann. Cas. 841; *Coleman* v. *State,* 49 S. E. 716; *Creighton* v. *Commonwealth,* 83 Ky. 142, 4 Am. St. Rep. 143; *Hawkins* v. *Commonwealth,* 61 Am. Dec. 147.

No error appearing, the judgment is affirmed.