# CHARLESTON.

STATE *v.* BRADY MURPHY .

(No. 6171)

Submitted October 16, 1928. Decided October 23, 1928.

*J. H. Meek, J. Floyd Harrison* and *D. B. Hardwick,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *John J. Hamrick,* for the State.

HATCHER, JUDGE:

The defendant was convicted of the voluntary manslaughter of Samuel Laney and sentenced to two years in the penitentiary. The homicide took place under the following circumstances: About dark one evening the defendant, who was a deputy sheriff, was in a garage on Piedmont Road in the city of Huntington. He and the garage owner heard a crash on the street, rushed out, and saw Laney getting from his car,. which was wrecked upon the side walk. Laney said he wasn't hurt and declared that a car had hit him and gone on. The defendant was pointed out to Laney as an officer, and Laney requested the defendant to catch that car. The street was visible five blocks in one direction and two in the other. No other cars were in sight except the sheriff's car (in care of defendant), parked across the street from the garage, and one parked some distance down the street. Witnesses who gathered about the scene say that Laney "seemed unnerved", "seemed addled", "was acting very peculiar", "acted like a crazy man", "was either temporarily insane or drunk". From some of these witnesses it appears that Laney did not know in which direction the car which he said hit him was going, and that he finally qualified even that declaration by saying: "Well it looks like something hit me." Defendant examined the sheriff's car and the one down the street. He found that the latter bore no signs of a collision, but that the former was badly damaged. He returned to Laney's car which he searched for whiskey but found none. According to his own testimony he then saw Laney staggering a little, asked Laney to blow his breath in his face, which Laney did, and smelling liquor he placed Laney under arrest.

The defendant then turned from Laney momentarily to answer a remark of a by-stander when Laney drew and covered defendant with a pistol saying, according to the various

witnesses, "Oh, no, big boy, I've got it on you. I'm from Kentucky and have to be cited;" "Don't follow me. I haven't disturbed no body and I don't mean to be disturbed; you smart guys think you have it on me, but you haven't. I have got it on you. If you think I have not got a right to do this, investigate and you will see." "If you don't think I'll shoot you just follow me." Laney then backed away into the darkness. The defendant requested the garage owner to call the Huntington police and went through an alley to head Laney off. He met Laney in a Mr. Saybree's yard, about 150 feet from the garage. Defendant says that when he saw Laney, he covered him with his pistol and told him to "Stick up his hands"; that Laney then had his pistol in his right hand down by his side; that Laney pointed the pistol in defendant's direction and "commenced raising his gun to shoot"; that defendant then fired three times; that at the third shot Laney went down on his elbows, with his gun still in his right hand; that defendant *circled around* him and kicked the pistol out of his hand, following which Laney fell back and died. The defendant returned to the garage where he said, "He made me do it," or "I had to do it."

Two shots took effect, one passing through Laney's left arm from the front and the other entering the chest near the right shoulder, ranging slightly upward and leaving the body at the left shoulder blade.

Mrs. Saybree was in her house and did not see the shooting. She said she heard Laney mumbling as he came into the yard; that she did not hear defendant order Laney to "Stick them up", and could not testify whether he said it or not; that she heard the shots, looked out, saw Laney fall and saw defendant come up to the deceased, stand just a minute and then walk away. Mr. Saybree added nothing to the evidence of his wife and the other witnesses were some 150 feet away and could not testify as to the details of the shooting.

The doctor and another witness who examined Laney shortly after the shooting testified that no odor of liquor was noticeable about him. The undertaker testified that he pumped Laney's stomach soon after the killing and found no trace and noticed no odor of an intoxicant. He admitted that

it was "awful hard" to detect liquor under such circumstances. A witness who saw Laney at Catlettsburg, Ky., about three-quarters of an hour before the tragedy said he was sober there. In response to an interrogation by the prosecuting attorney as to finding a bottle of paregoric on the dead man, a witness stated they found "a bottle of something." A witness who lived near the garage testified to hearing a car pass going very fast, hearing the crash, going out and seeing no other cars except the three mentioned. Another witness who saw Laney shortly before the accident going toward Huntington, testified that Laney was driving in an erratic manner and running against and upon the curb. The defendant proved a good reputation as a peaceable, law abiding citizen; that he had been an officer for six years; had made a large number of arrests each year and had never had trouble in making an arrest, before this one.

The law in such case is settled. In making a lawful arrest of a misdemeanant or in preventing the escape of one under arrest, an officer is justified in taking the life of the misdemeanant, when he is resisted by him in such manner that the officer believes, upon reasonable grounds, that he is in danger of death or great bodily harm. 5 C. J., p. 424-5-6; 30 C. J., p. 75, sec. 255; 2 R. C. L., 473; Wharton on Homicide, sec. 500; Bishop's New Cr. Pro., 2nd ed., sec. 160-1; 3 A. L. R., annotation, p. 1175, supplemented by annotation 42 A. L. R., p. 1203; *State* v. *Dierberger*, 96 Mo. 666, 674-5; *Birt* v. *The State*, 156 Ala. 29, 37; *Smith* v. *Com.*, 176 Ky. 466; *Jett* v. *The State*, (Ark.), 236 S. W. 621, 624; *State* v. *Garrett*, 60 N. C. 144, 150. In the old case of *State* v. *Anderson*, 1 Hill, 212 (*328), the South Carolina court embraces the subject in this sentence: "So long as a party, liable to arrest, endeavors peaceably to avoid it, he may not be killed; but, whenever by his conduct, he puts in jeopardy the life of any attempting to arrest him, he may be killed, and the act will be excusable."

The evidence clearly demonstrates that Laney's tale of the "hit and run car" was the figment of an overwrought imagination and that he himself wrecked his car; that he was in a highly abnormal mental condition, which made him a menace

to himself and the community, and which in the absence of a history of insanity, is fairly attributable to a drug (paragoric or "something") or liquor. After an investigation of the circumstances surrounding the wreck and of Laney himself the defendant charged that condition to liquor. He had reasonable grounds for his conclusion. He therefore had the right to arrest Lancy. The state questions the conclusion and the right, but it is unnecessary to debate the matter. In pointing his pistol at the officer, Laney committed an assault. Wharton's Cr. Law, 11th ed., sec. 800; *State* v. *Seery,* 95 Iowa 652, 64 N. W. 631. In carrying a pistol about his person he committed a statutory offense. Code, chapter 148, section 7. Here were two unquestioned crimes, which were unjustifiable even if the arrest were unlawful. Both were committed in the presence of the officer, and either made it his duty to arrest Laney. No evidence contradicts or even reflects on the defendant's statement that when he and Laney met in Saybree's yard, Laney raised his pistol. This testimony is supported by Laney's threat to shoot if he were followed. The statement should have been given due weight and credit by the jury. *State* v. *Clifford,* 87 W. Va. 358. When this is done, the verdict is not warranted by the law and the evidence.

The foregoing determination makes a discussion of the other allegations of error unnecessary.

The state says that in the bill of exceptions which comprehends the evidence, the evidence itself is not identified and certified by the trial court. Immediately following the trial evidence is the following statement: "And this was all the evidence introduced by either the state or the defendant upon the trial of his case." Twenty pages intervene in the bill of exceptions between that statement and the signature of the trial judge. Those pages relate to matters which arose in the trial after the trial evidence was closed. Remoteness of a certificate in a bill of exceptions from the signature of the trial judge is immaterial; it is all one instrument, and his signature vouches every statement it contains. The evidence was properly certified.

The judgment of the lower court will be reversed, the ver-

dict of the jury set aside and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*