STATE OF ARKANSAS *v.* JOSEPH H. WESTON

CR 73-122                                      501 S.W. 2d 622

Opinion delivered November 26, 1973
[Rehearing denied December 24, 1973.]

*Jim Guy Tucker,* Atty. Gen. by: *O. H. Hargraves,* Deputy Atty. Gen., for appellant.

*Ted Boswell* and *Laser, Sharp, Haley, Young & Boswell,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee was charged by information with the offense of criminal libel. The information was amplified by a bill of particulars filed by the State at the defendant's request. The trial court sustained a demurrer to the information and dismissed the charges, on the ground that the statute defining the offense is so vague as to be unconstitutional. Ark. Stat. Ann. § 41-2401 (Repl. 1964). The constitutionality of the statute on its face, as it applies to this information and bill of particulars, is the issue now before us.

The information charged that Weston, unlawfully and maliciously, in writing in a publication identified as the Sharp Citizen, blackened the memory of Larson Dickey, Sr., deceased, and defamed Larson Dickey, Jr., a living person, by the publication of writings tending to impeach their honesty, integrity, veracity, or reputation and thereby expose them to public hatred, contempt, and-or ridicule. In response to the motion for a bill of particulars the State filed a copy of the article, apparently an editorial, which gave rise to the charges.

That article, using the "editorial we," states that Weston has received letters indicating that "Junior" Dickey and Les Anderson, the county judge of Sharp County, are organizing the citizens of Cave City "to place another advertisement in the newspapers all around Cave City about how the Sharp Citizen ought to be run out of business." The article states that the two men will have to find a scribe to handle the paper work, because they cannot read or write. The article goes on to say: "Then, too, they will have to consider the cost of all those ads. The price would be greater than Junior Dickey

could lay his hands on, even if he ran his still (the one he inherited from his father) every night for a month." The article contains several other paragraphs, but we have given what we regard as the pertinent assertions.

The ownership or possession of an illicit still is a felony, punishable by confinement for not less than one year nor more than three years. Ark. Stat. Ann. §§ 48-936.1 and 48-936.2 (Supp. 1971 and Repl. 1964).

The statute now in question, which is said to be unconstitutionally vague, was adopted as part of the Revised Statutes of 1838 and reads as follows:

> A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, veracity, virtue or reputation, or to publish the natural defects, of one who is living, and thereby expose him to public hatred, contempt and ridicule. [Section 41-2401.]

Weston does not argue, and the Supreme Court of the United States has not held, that the guaranties of the First Amendment preclude the State from declaring the publication of a libel to be a criminal offense. Rather to the contrary, both the appellant and the appellee quote from and rely upon Professor Leflar's article, Legal Liability for the Exercise of Free Speech, 10 Ark. L. Rev. 155 (1956), where the need for restrictions upon completely unfettered speech is recognized:

> No responsible citizen can intelligently argue that the individual's right to free speech could be absolute, in an ordered society made up of human beings . . . No society yet organized by mankind has been willing to permit the completely free and untrammeled communication of every possible idea that might emerge through the lips or pens of those who seek for one reason or another to affect their fellows by the use of words.

* * * *

We are long accustomed to rules of law under which a man is legally liable for his harmful acts. . . . That words can be as harmful as physical acts nobody will deny. The fact of course is that words are acts, as much the voluntary product of a deliberate plan to engage in a course of conduct as is the swinging of a fist or the exertion of pressure on the gas pedal of a motor car.

Thus the narrow question is whether our statute, on its face, is so lacking in precision as to fall fatally short of defining the conduct that is being prohibited. We are unwilling to strike down the statute upon that ground. Libel, both civil and criminal, is notoriously difficult of exact definition. The definitions of libel in publications that seek the greatest possible precision do not differ materially from our statutory definition. Webster's New International Dictionary (2d ed., 1934); Bouvier's Law Dictionary (3d rev., 1914); Restatement of Torts, § 559 (1938). A number of other states have adopted statutes similar to ours. We have found no case holding such a definition to be unconstitutionally vague.

Counsel for the appellee do not suggest in their brief any definition of libel that would, in their opinion, withstand an attack based upon the First Amendment. The formulation of such a definition could hardly give effect to the intention of the legislature. That is, the more precise and inflexible the definition becomes, as by making it a libel to falsely charge another with being a liar or a thief, the more likely it is that the statutory language would fail to encompass many, many instances of slightly different language that the legislature would also make punishable if it were practical to do so. Thus the alternative to the general language now contained in the statute would be an enactment so specific that it would necessarily discriminate between utterances so similar as to be equally culpable.

The appellee devotes much of his brief to a discussion of the line of recent Supreme Court decisions that began with *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964). (For an analysis of those cases see Note, 47

Notre Dame Lawyer 153 [1971].) Those decisions are not now pertinent to the case at hand, which comes to us upon demurrer to the information. There the court's emphasis was upon the plaintiff's burden of proving actual malice and upon the public status of the complaining party or the public interest in the subject matter of the asserted defamation. Here the existence and effect of actual malice are elements to be developed by the proof rather than to be set out in the information. Similarly, whether the asserted ownership or possession of a still is a matter of pressing public interest cannot be determined upon demurrer to the charges.

The trial court was in error in sustaining the demurrer. Inasmuch as the appellee has not yet been placed in jeopardy, *State* v. *Gill*, 33 Ark. 129 (1878), the judgment is reversed and the cause remanded for further proceedings.