Franklin D. MARTIN *v.* STATE of Arkansas

CR 76-201                                        547 S.W. 2d 81

Opinion delivered February 22, 1977
(In Banc)
[Rehearing denied March 28, 1977.]

*Harold L. Hall*, Public Defender, by: *Robert J. Govar*, Dep. Public Defender, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Frederic L. Frawley*, Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. Appellant Franklin D. Martin was convicted of first degree battery in violation of Ark. Stat. Ann. § 41-1601(1)(c) (Criminal Code 1976), the illegal act being that of shooting a person in the face with a .38 caliber revolver. The sentence imposed was ten years' imprisonment and a $10,000 fine.

The pertinent statute defines first degree battery as follows:

(1) A person commits battery in the first degree if:

(c) he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life;

On appeal appellant contends that § 41-1601(1)(c), on its face and as applied to him, is unconstitutionally vague, and also defective because the culpable mental state

necessary to warrant a conviction is not set out therein.

Ark. Stat. Ann. § 41-204(2) (Criminal Code 1976) provides in pertinent part:

> . . . if the statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required, and is established only if a person acts purposely, knowingly, or recklessly.

Ark. Stat. Ann. § 41-203(1) (Criminal Code 1976) defines "purposely" and, in accordance with the provisions of the statute, the court gave the following instruction to which appellant objected:

> A person commits Battery in the First Degree if he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. The conduct must be done purposely.

> A person acts purposely without respect to his conduct or result thereof, when it is his conscious object to engage in conduct of that nature or to cause such a result.

In the commentary to § 41-1603 (Criminal Code 1976) it is stated:

> For the most part, Battery in the first degree comprehends only life-endangering conduct. The severity of punishment authorized is warranted by the conjunction of severe injury and a wanton or purposeful culpable mental state. Each sub-section describes conduct that would produce murder liability if death resulted. * * *

A criminal statute must give fair warning of the proscribed conduct. In *United States* v. *Harriss,* 347 U.S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954), the Court stated:

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person

of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

In *Harmon v. State*, 260 Ark. 665, 543 S.W. 2d 43 (1976), this Court applied the standard of specificity as defined in *U.S. v. Petrillo*, 332 U.S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877 (1947):

> \* \* \* The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.

We find appellant's objection without merit since Ark. Stat. Ann. § 41-204(2) (Criminal Code 1976) clearly provides a culpable mental state must be proved. The court in its instruction imposed the highest burden upon the State, requiring the State to prove the conduct of appellant was done purposely instead of knowingly or recklessly.

Appellant admits in his brief that the extent of harm to the victim is adequately defined in Ark. Stat. Ann. § 41-115(19) (Criminal Code 1976) as follows:

> "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.

Appellant argues that the statutory phrase "under circumstances manifesting extreme indifference to the value of human life" does not provide sufficient notice to the accused or the jury of the acts or conduct prohibited by the statute.

84

We do not agree as we find sufficient notice in the words of the statute to indicate the type of conduct proscribed. In *United States* v. *Harriss, supra,* it was stated:

> . . . [I]f the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise [cases cited]. And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction . . . .

In *State* v. *Weston,* 255 Ark. 567, 501 S.W. 2d 622 (1973), we pointed out why it is desirable to use general language in defining libel rather than a precise and inflexible definition.

Almost the same argument made by appellant here was made in *Harmon* v. *State,* supra. In *Harmon* appellant argued that the provisions of the statute were patently vague and overbroad and that inadequate guidelines were given to the accused and to the jury. In that case the Court stated:

> In our view the terminology of § 41-1602(1)(d) is not vague nor overbroad. The provisions of the statute are of such "common understanding and practice" that it cannot be said that an ordinary individual or juror would have to speculate as to its meaning.

In the case at bar the phrase "circumstances manifesting extreme indifference to the value of human life" indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. The language of the Arkansas statute does not require reasonable men to speculate as to its common understanding or application.

In *People, by Russel* v. *District Court for Fourth J.D., Colo.,* 521 P. 2d 1254 (1974), the court had before it *inter alia* a first degree murder statute using the words "under circumstances manifesting extreme indifference to the value of human life." The statute was challenged as being unconstitutional "on the grounds that it was facially void for vagueness . . . " and the

court applying the test of whether men of common in-
telligence apprehend the statute's meaning found the statute
valid. We have reached the same conclusion in regard to the
Arkansas statute.

Affirmed.

FOGLEMAN, J., concurs.

BYRD and HICKMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the
majority opinion, but because of the dissents, I feel compelled
to state my concurrence in this separate opinion.

I will first address the fallacy in the conclusion of Mr.
Justice Byrd that the Arkansas Criminal Code section under
which appellant was charged, Ark. Stat. Ann. § 41-1601 (1)
(c) (Crim. Code, 1976), when considered with the general
section defining culpable mental state, Ark. Stat. Ann. § 41-
203 (Crim. Code, 1976) results in a requirement that one
have a conscious object to cause serious physical injury to
another person under circumstances manifesting extreme in-
difference to the value of human life in order to be guilty of
battery in the first degree.

First, I would point out that Justice Byrd's recitation of
the definition of culpable mental state is incomplete. It omits
the definitions of three of the four kinds of the required men-
tal state. Two of the three kinds he omitted to mention are:

(2) "Knowingly." A person acts knowingly
with respect to his conduct or the attendant cir-
cumstances when he is aware that his conduct is of that
nature or that such circumstances exist. A person acts
knowingly with respect to a result of his conduct when
he is aware that it is practically certain that his conduct
will cause such a result.

(3) "Recklessly." A person acts recklessly *with
respect to attendant circumstances* or a result of his conduct
*when he consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.* The risk

must be of a nature and degree that disregard thereof constitutes *a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.* [Emphasis mine.]

The seriousness of this omission is apparent when we proceed to Ark. Stat. Ann. § 41-204 (2) and (3) (Crim. Code, 1976), which provides:

(2) *** [I]f the statute defining an offense does not prescribe a culpable mental state, *culpability is* nonetheless *required and is established* only *if a person acts purposely, knowingly, or recklessly.* [Emphasis mine.]

(3) *** When acting recklessly suffices to establish an element, the element also is established if a person acts purposely or knowingly. When acting knowingly suffices to establish an element, the element also is established if a person acts purposely.

A reading of these pertinent subsections of the Criminal Code clearly shows the error in the conclusion that a conscious object to cause a result is a necessary requisite to establish the offense.

Reference to portions of the commentary to the pertinent sections leaves absolutely no room for doubt about the matter. This Commentary was before the General Assembly when the Code was adopted. The Commentary on Ark. Stat. Ann. § 41-203 includes the following:

Section 203 promotes specificity and lucidity throughout the Code by defining the four culpable mental states utilized in turn to define Code offenses. ***

\* \* \*

The Code recognizes four distinct culpable mental states: a person may act purposely, knowingly, recklessly, or negligently. These culpable mental states, taken in conjunction with the *three possible constituents of an offense* — i.e., *conduct, attendant circumstances,* and *result* — serve to

define each Code offense. In other words, under the Code, every offense is defined so as to require that a person act *either purposely, knowingly, recklessly* or *negligently with respect to conduct, attendant circumstances, and/or* the *result* of conduct.

Section 203 (1) defines a "purposeful" culpable mental state in terms of *a consciously entertained objective to engage in conduct or cause a result.* "Knowing" conduct, as defined by Section 203 (2), involves *awareness of* (1) *the nature of the conduct* in question, (2) *any relevant attendant circumstances,* and (3) the virtual certainty that a particular result will attend the conduct. An object to engage in conduct or an awareness of the nature of conduct does not mean that the actor must know that the conduct is illegal.

The distinction between knowing and purposeful conduct is a fine, and sometimes elusive, one. \*\*\* The distinction will come into play only with respect to a limited number of circumstances, but in those situations *it is important to distinguish conduct designed to achieve a result from that engaged in with knowledge that a result will occur, but without a purpose to cause the result.* \*\*\*

\* \* \*

Subsection (3) defines "recklessness." While both "reckless" and "knowing" conduct involve "aware" actors, "recklessness" is defined in terms of risk creation, specifically, *an awareness of a "substantial and unjustifiable" risk that certain attendant circumstances exist or that prohibited consequences will occur.* \*\*\* [Emphasis mine.]

Turning to the Commentary on § 41-204, I find:

Subsection (2) complements section 202 (2). The latter requires that, with a few exceptions, *a person is criminally liable only if he acts with a culpable mental state with respect to all elements of the particular offense.* Section 204 (2) provides that *when a statute fails to specify a culpable mental state, Section 202( 2) is satisfied by proof that the person acted at least recklessly.* Consequently, the subsection "accepts as

the basic norm what usually is regarded as the common law position. . . . Most importantly, it represents the most convenient norm for drafting purposes, since when purpose or knowledge is to be required, it is normal to so state; and negligence ought to be viewed as an exceptional basis of liability." M.P.C. §2.02, Comment at 127 (Tent. Draft No. 4, 1955). [Emphasis mine.]

\* \* \*

Subsection (3) simply supplies a method for assessing sufficiency of proof based on the obvious proposition that a lesser culpable mental state is necessarily established by proving a greater one. So, if an offense is defined in terms of knowing conduct, proof of purposeful conduct suffices, and so on.

Moving now to the Commentary following Ark. Stat. Ann. § 41-1603 (Crim. Code, 1976), which also specifically relates to §§ 41-1601, 1602, I would here emphasize a portion of the Commentary quoted by Justice Roy, to wit: "Each subsection describes *conduct that would produce murder liability, if death resulted.*" [Emphasis mine.]

Clearly, the subsection in question is violated if there is a conscious object to engage in *conduct*[1] of the nature prohibited, even if the person charged has no conscious object to cause serious physical injury to another person. But the statute would also be violated if the conduct was engaged in "knowingly" or "recklessly" as defined by Ark. Stat. Ann. § 41-203. The statutory definitions require more than simple negligence or recklessness. There must be a "conscious" or "gross" recklessness or a "gross" negligence. This is in keeping with pre-existing law that there must be culpable negligence before there can be a crime. Ark. Stat. Ann. § 41-116 (Repl. 1964) provided that acts committed by misfortune or accident should not be deemed as criminal when it appeared that there was no evil design, intention or culpable negligence. See also, *Ray v. State,* 251 Ark. 508, 473 S.W. 2d 161; *Benson v. State,* 212 Ark. 905, 208 S.W. 2d 767; *Phillips* v.

---

[1]Conduct under the Code means an act or omission and its accompanying mental state. Ark. Stat. Ann. § 41-201 (Crim. Code, 1976).

*State*, 204 Ark. 205, 161 S.W. 2d 747. Cf. Ark. Stat. Ann. § 41-2209 (Repl. 1964).

The hypothetical bugbear erected by my brother Byrd is actually an illusion. Only looking at the Criminal Code with "shaft vision" could create it. This is not to say that a prison guard who acted with grossly reckless indifference to the value of human life could not and should not be prosecuted. Still, the likelihood that a law enforcement officer, jailer or guard who properly used, or reasonably thought he properly used, a weapon in discharge of his duties will go to prison for doing so is no greater than the probability that an innocent person will be imprisoned for any crime. There is no more likelihood that he would go to prison for this action than for involuntary manslaughter or assault with a deadly weapon under pre-Code law. See Ark. Stat. Ann. §§ 41-2209 (Repl. 1964), 41-605 (Repl. 1964). Of course, the legislature did not intend to create the monster envisioned by my brother Byrd, and did not do so. The difference between the escaping prisoner and the "machine-gunning guard" is distinctly recognized in the Code.

Here again, I point out that battery in the first degree requires a *wanton* or *purposeful* mental state. See Commentary, § 41-1601. I also call attention to the fact that one does not commit an offense unless he acts with a culpable mental state with respect to every element of the offense. Ark. Stat. Ann. § 41-202 (2) (Crim. Code, 1976).

The provisions on justification afford a real protection to the hypothetical "machine-gunning guard." Justification is, of course, a defense to any offense charged. Ark. Stat. Ann. § 41-502 (Crim. Code, 1976). This has the effect of requiring the prosecution to negate the defense beyond a reasonable doubt, once evidence tending to support it has been adduced either by the state or defense. Ark. Stat. Ann. § 41-110 (3) (Crim. Code, 1976). Conduct which would otherwise constitute an offense is justifiable when it is performed by a public servant in the reasonable exercise or performance of his official powers, duties or functions. Ark. Stat. Ann. § 41-503 (1) (Crim. Code, 1976). The hypothetical "machine-gunning guard" would certainly be a public servant. Ark. Stat. Ann. § 41-115 (16) (Crim. Code, 1976). A law enforcement officer is

justified in using deadly physical force upon another person when he reasonably believes it necessary to effect an arrest or prevent the escape from custody of an arrested person whom he reasonably believes has committed or attempted to commit a felony. Ark. Stat. Ann. § 41-510 (2) (a) (Crim. Code, 1976). A law enforcement officer, or a guard employed in a correctional facility, is justified in using deadly physical force when and to the extent that he reasonably believes it necsssary to prevent the escape of a prisoner from a correctional facility, unless the law enforcement officer or guard knows or reasonably should know that the prisoner is charged with or has been convicted of only a misdemeanor, in which case only non-deadly physical force may be used. Ark. Stat. Ann. § 41-513 (Crim. Code, 1976). This section provides special protection to persons under a duty to prevent the escape of inmates from correctional facilities. Although the entire spirit of the Code in this situation is expressed in its words, it is summarized in the words of the Commentary on the section last cited in this language:

> * * * Imposing strict liability on a guard in an escape situation is obviously unfair, since there may be insufficient time to determine whether an escaping prisoner is a felon or a misdemeanant. Consequently, the defense of justification is withheld only if the guard employs deadly physical force against one who he knows or reasonably should know has committed only a misdemeanor.

Furthermore, it is a defense to a prosecution that the actor engaged in the conduct, charged to constitute the offense, under a mistaken belief of fact, if his mistaken belief of fact establishes a defense of justification. Ark. Stat. Ann. § 41-206 (Crim. Code, 1976). This section is intended to codify what was believed to be the prevailing view as to the relevance of mistake of fact. See Commentary on § 41-206, where I find the following:

> * * * As a matter of definition, of course, a mistaken belief of fact precludes conviction when the mistake negates the culpable mental state required to establish the offense. For example, one who leaves a restaurant taking a coat that he mistakes for his own cannot be con-

victed of theft since his mistake of fact negates the requisite intent to deprive the true owner of the coat. The assertion of such a mistaken belief is not, strictly speaking, a "defense," since it merely focuses on the state's failure to prove all elements of the offense charged, not on an "excuse" or "justification."

Of course, the Code provides that there is no justification if the belief that the use of force is necessary is arrived at recklessly or negligently or the force is excessive. Ark. Stat. Ann. § 41-514 (1) (Crim. Code, 1976). Such a belief is not a reasonable belief. See Ark. Stat. Ann. § 41-115 (18) (Crim. Code, 1976). The stance adopted in the Commentary on § 41-514 is stated even more clearly than elsewhere in the Commentary to the Code. It is stated thus:

> * * * "[W]e do not believe a person ought to be convicted for a crime of intention where he has labored under a mistake such that, had the facts been as he supposed, he would have been free from guilt. The unreasonableness of an alleged belief may be evidenced [sic] that it was not in fact held, but if the tribunal is satisfied that the belief was held, the defendant in a prosecution for a crime founded on wrongful purpose should be entitled to be judged on the assumption that his belief was true. To convict for a belief arrived at on unreasonable grounds is, as we have urged, to convict for negligence. Where the crime otherwise requires greater culpability for a conviction, it is neither fair nor logical to convict when there is only negligence as to the circumstances that would establish a justification."

The "machine-gunning guard" is protected under the Code as fully as he is under existing law. He gets no more protection than he should.

Turning now to my brother Hickman's conclusion that the phrase "[under] circumstances manifesting extreme indifference to the value of human life" is obviously so vague that a person of ordinary intelligence could not conceive of the criminal conduct proscribed, and thus it is unconstitutional. I would point out that we have not heretofore experienced great difficulty with equally broad terms in our

criminal statutes. The concept is widely used and only the words are new. Our capital felony murder statute contains these very words. Ark. Stat. Ann. § 41-1501 (Crim. Code, 1976). There the Commentary is enlightening. I find:

> Second, the killing must be done under "circumstances manifesting extreme indifference to the value of human life." The "extreme indifference" language makes it clear that proof of an inadvertent killing in the course of a felony will not suffice to establish liability under Section 1501 (1) (a). Nor as will be pointed out infra, will [proof of an inadvertent killing] support a conviction of First Degree Murder. In the absence of this language, a conviction entailing punishment by death could be based on conduct that would otherwise support at most only a conviction of manslaughter or even negligent homicide — for example, where the actor, in making his escape, negligently causes the death of another in an automobile accident occurring several blocks away from the scene of the crime. The Code formulation resulted from an examination of considerations going to the heart of the felony murder rule itself:

> "At common law, the 'malice' necessary for murder could be found from the fact that the offender was engaged in robbery, rape, burglary, arson, or other common law felony. The effect of the felony-murder rule was to permit capital punishment for certain unintended and even quite accidental killings in the commission of crimes which of themselves entailed considerable risk of physical violence. Since the common law felonies were themselves subject to capital punishment, the impact of the common law felony-murder rule was not great. As the death penalty for these other felonies was eliminated, the question arose why a miscreant who engaged in a non-capital offense should be subject to capital punishment for a death in respect to which he had no culpability or only such culpability as would ordinarily lead to manslaughter rather than murder liability." Vol. II, Working Papers, at 825.

The identical words also appear in Ark. Stat. Ann. § 41-1502 (Crim. Code, 1976) defining non-capital felony murder as first degree murder, to which the following Commentary is added:

Section 1502 (1) (a) carries forward the felony murder doctrine. The Code provision differs from existing law in that liability arises for a killing in the course of and in furtherance of *any* felony or in flight therefrom. The expansive effect of this change is circumscribed somewhat by the requirement that the death occur "under circumstances manifesting extreme indifference to the value of human life." Thus, the inadvertent killing during the course of a non-violent felony does not constitute first degree murder. Liability also arises for acts of accomplices, although a narrowly drawn affirmative defense to a charge grounded on accomplice conduct is provided by subsection 1502 (2).

The precise words again appear in the definition of murder in the second degree. Ark. Stat. Ann. § 41-1503 (Crim. Code, 1976). The Commentary clearly points out that the language is more definite than language used to define the crime in pre-Code statutes, viz:

Present law defines murder as the unlawful, malicious killing of a human being. Ark. Stat. Ann. § 41-2201 (Repl. 1964); *Wooten* v. *State*, 220 Ark. 750, 249 S.W. 2d 964 (1952). Second Degree Murder is all murder other than First Degree Murder. § 41-2206 (Repl. 1964). Consequently, Second Degree Murder includes all malicious killings other than those perpetrated during the commission of a violent felony or pursuant to a premeditated intent to kill.

This definition is deficient for several reasons. One is the uncertain contours of the term "malice," which is statutorily defined as a deliberate intent to unlawfully take a life or a killing under circumstances manifesting "an abandoned and wicked disposition." Ark. Stat. Ann. §§ 41-2203, 41-2204 (Repl. 1964). A more confusing shortcoming is the analytical process necessarily entailed by defining an offense in terms of what it is not.

First, one must determine whether the homicide constitutes murder. If so, the conduct must then be measured against the definition of First Degree Murder. If found not to constitute the higher degree of homicide, the conduct is Second Degree Murder.

Section 1503 adopts a more comprehensible approach. Second Degree Murder is defined, like all other offenses, in terms of its constituent elements. "Malice" as a definitional term is discarded. However, the concept of malice is retained by defining the offense to require the same culpable mental states with respect to results and attendant circumstances that ordinarily suffice to show malice.

Subsection 1503 (1) (a) provides liability for purposefully causing a death. It requires proof that the actor engaged in conduct the "conscious object" of which was to produce death. As is the case under present law, to sustain a conviction of Second Degree Murder the proof need not show premeditation or deliberation respecting conduct or its consequences.

Section 1503 (1) (b) creates accountability for murder where the actor knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. An actor "knowingly" causes a result when he engages in conduct with an awareness that "it is practically certain that his conduct will cause such a result." See, Section 203 (2). The requirement of "knowledge" with regard to attendant circumstances manifesting extreme indifference is satisfied if the actor "is aware . . . that such circumstances exist." See, Section 203 (2).

\* \* \*

As the preceding analysis indicates, the proposed formulation of second degree murder defines an offense differing little, if at all, from present law. In lieu of the vague requirement of "malice," purposeful or knowing conduct is required either with respect to death or serious physical injury. Knowing conduct is required

regarding attendant circumstances. To the extent that the present statutory requirement of a showing of malice means that the proof must show a general intention to do an unlawful and unjustifiable injury to another, Section 1503 codifies present law. See, *Jett* v. *State,* 151 Ark. 439, 236 S.W. 621 (1922).

I submit that this language is as definite and certain as other phrases and clauses with which we have experienced no such difficulty as that Mr. Justice Hickman finds in the use of new words to express old thoughts. For example:

§ 41-605 (Repl. 1964). If any person assault another with a deadly weapon, instrument, or other thing, with an intent to inflict upon the person of another a bodily injury, *where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition,* he shall be adjudged guilty of a misdemeanor; *** [Emphasis mine.]

§ 41-2201 (Repl. 1964). Murder is the unlawful killing of a human being, in the peace of the State, *with malice aforethought,*[2] either express or implied. [Emphasis mine.]

§ 41-2208 (Repl. 1964). Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation, apparently sufficient to make the passion irresistible.

§ 41-2209 (Repl. 1964). If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, *done without due caution and circumspection,* it shall be manslaughter. Provided further

---

[2]Our adopted definition of "with malice aforethought" is no more definite than the language under examination here. In *Gordon* v. *State,* 125 Ark. 111, 187 S.W. 913, Ann. Cas. 1918A 419, we quoted it, viz: "The phrase 'malice aforethought' was properly defined as the voluntary and intentional doing of an unlawful act, with the purpose, means, and ability to accomplish the reasonable and probable consequence of it *** by one of sound mind and discretion, the evidence of which is inferred from acts committed or words spoken."

that when the death of any person ensues within one [1] year as a proximate result of injury received by the driving of any vehicle in reckless, *willful or wanton disregard of the safety of others,* the person so operating such vehicle shall be deemed guilty of involuntary manslaughter. [Emphasis mine.]

§ 41-2235 (Repl. 1964). A bare fear of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing; it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of revenge.

§ 41-2501 (Repl. 1964). Maiming consists in unlawfully disabling a human being, by depriving him of the use of a limb, or member, or rendering him lame, or defective in bodily vigor.

§ 75-1001 (Repl. 1957). (a) When the death of any person ensues within one [1] year as a proximate result of injury received by the driving of any vehicle in reckless or wanton disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide. ***

To require more explicit language in the statute in question would virtually require the impossible.

CONLEY BYRD, Justice, dissenting. What the majority does not explain is what is meant by "culpable mental state." The Criminal Code provides the answer in § 41-203 (1976) as follows:

"For the purposes of this Code there are four kinds of culpable mental states, which are defined as follows:

(1) 'Purposely.' A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result."

When the foregoing definition of a culpable mental state is added to Ark. Stat. Ann. § 41-1601(1)(c) (Criminal Code 1976) the statute then reads as follows:

> "(1)   A person commits battery in the first degree if:
>
> . . .
>
> (c)   he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life;"
>
> [*and it is his conscious object to cause such a result.*]

That the foregoing does not give the citizenry of this state fair notice of the type of conduct forbidden can be demonstrated by a prisoner who steals an automobile to effectuate his escape. Suppose that the prisoner after stealing the automobile runs over the gate guard and that the prisoner is then shot by the tower guard who is manning a .30 caliber machine gun. The term "serious physical injury" is defined by the New Criminal Code as a "physical injury that creates a substantial risk of death," Ark. Stat. Ann. § 41-115(19). As far as the substantial risk of death is concerned, the conduct and conscious object of both the escaping prisoner and the machine gunning guard would create "a serious physical injury." The only other phrase left is "under circumstances manifesting extreme indifference to the value of human life." I submit that the majority opinion does not give an explanation of why the conduct of both the escaping prisoner and the machine gunning guard would not fall within the category of "manifesting extreme indifference to the value of human life."

Obviously, I have used an extreme example to demonstrate how vague and indefinite the phrase "under circumstances manifesting extreme indifference to the value of human life" is when applied to law enforcement officers. However, since the foregoing statute is broad enough and vague enough to send to prison any law enforcement officer, jailer or guard who uses a gun in the discharge of his duties, I cannot believe that the legislature intended to create such a monster. Therefore, since the statute creates an overly broad

definition which fails to give a person of ordinary intelligence fair notice of what conduct is forbidden, it looks to me that the statute should be declared unconstitutional, *United States v. Harriss*, 347 U.S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954).

Those who refer to my position as "fallacy" "hypothetical bugbear" and as being "shaft vision" do a better job than I of showing that the statute under consideration was intended to be as broad as "Mother Hubbard's dress." Otherwise there would be no need for supplying defenses to certain classes of persons termed "JUSTIFICATION," Ark. Stat. Ann. §§ 41-501—41-514 (Crim. Code 1976). See Ark. Stat. Ann. § 41-110 (Crim. Code 1976) which provides:

> "(3) *The issue of the existence of a defense need not be submitted to the jury unless evidence is admitted supporting the defense.* If the issue of the existence of a defense is submitted to the jury, the court shall charge that any reasonable doubt on the issue requires that the defendant be acquitted. *A defense is any matter:*
>
> . . .
>
> *(c)  involving an excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to introduce supporting evidence.* [Emphasis mine.]
>
> (4)  The defendant must prove an 'affirmative defense' by a preponderance of the evidence. An 'affirmative defense' is any matter:
>
> (a)  so designated by a section of this Code; or
>
> (b)  so designated by a statute not a part of this Code."

See also Ark. Stat. Ann. § 41-502 (Crim. Code 1976) which provides:

> "In a prosecution for an offense, justification as defined in this chapter [§§41-501 — 41-514] is a defense."

The record shows that appellant was a Pulaski County

Deputy Sheriff at the time of the events giving rise to this prosecution.

For the reasons stated, I respectfully dissent.

DARRELL HICKMAN, Justice, dissenting. Franklin D. Martin was convicted of first degree battery in violation of Ark. Stat. Ann. § 41-601 (c) (Supp. 1975).

This section is part of the Arkansas Criminal Code which was adopted effective January 1, 1976, and the appropriate parts of the statute are:

(1)  A person commits battery in the first degree if . . .

(c)  he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. . . .

The appellant raises the issue that this statute is unconstitutional because it is vague and does not provide a person sufficient notice of the prohibited act.

It is a principle of law that a criminal statute must give a person of ordinary intelligence fair notice of the forbidden conduct. *U.S.* v. *Harriss*, 347 U.S. 612 (1954).

The phrase "circumstances manifesting extreme indifference to the value of human life" is not defined in the new criminal code. The language is obviously vague and it is difficult to believe that a person of ordinary intelligence could readily conceive of the criminal conduct described. It may be that attorneys, judges and legal scholars have no doubts as to the meaning of each and every word, but that is not the test. The legal arguments of the majority opinion and the concurring opinion are evidence enough of the utter futility these words will cause anyone, attempting to justify their "clear and simple" meaning.

I find that the phrase can have no real meaning by which a juror or an individual accused of such conduct could really understand what it means. Therefore, I respectfully dissent from the opinion of the majority and would find that the

statute in question is void as unconstitutional in violation of the Due Process Clause of the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution. I would reverse the decision of the lower court and dismiss the case.